## LEE and others vs. PECKHAM.

Wherever there is an agreement in fact, by which he who has the use of money is to pay therefor, to the owner of it, more than the law permits to be paid for such use, the agreement is usurious, although the usury does not appear upon the face of the instrument executed in pursuance of it. And courts of equity, when applied to for relief, will look at the substance of the transaction and not at its form.

Thus, where money was loaned at 24 per cent. interest, and a note given for the principal at 12 per cent., and renewed from time to time for the same amount, a sum being paid at each renewal equal to the interest at the illegal rate, but at the last renewal the agreement to pay 24 per cent was discontinued, and a note given for the principal at 12 per cent, a court of equity will not divide the transaction into an agreement to pay the principal and legal interest, and a separate agreement to pay illegal interest, and treat the last note as valid, but will regard the original transaction as a a single contract for the payment of illegal interest, and the last note as tainted by the usurious consideration.

The giving of a note void for usury does not relieve the maker from liability on an antecedent indebtedness which it was given to secure.

The usurious loan above mentioned having been made in 1857, and the last renewal made in 1859, the payee was entitled, under chap. 55, Laws of 1856, to receive upon the original contract the sum loaned, less any amount paid on the principal or for usurious interest, although under the law of 1859 the note was absolutely void.

A judgment having been entered on said note by virtue of a warrant of attorney, a court of equity will set it aside on condition that the maker pay the amount which the payee would have been entitled to recover.

APPEAL from the Circuit Court for *Milwaukee* County.

This was an appeal by the plaintiffs in the action from a judgment in favor of the defendant. The facts will sufficiently appear from the statements made in the opinion of the court.

*M. Steever* and *E. Mariner*, for appellants.

*W. H. Peckham* and *F. Bloodgood*, for respondent.

*By the Court,* COLE, J. This is an equitable action brought for the purpose of setting aside two judgments which were entered upon notes and warrants of attorney, and to have the notes declared void on the ground of usury. The material facts of the case are these: In June, 1857, the appellants borrowed of *Peckham* the sum of twelve hundred dollars,

giving their note for the amount with legal interest, payable in sixty days from date, but agreeing in fact to pay interest at the rate of twenty-four per cent. per annum. When the note became due, they gave a new note for the same amount and rate of interest as the former, and paid the legal and usurious interest. There were a number of renewals and payments of legal and usurious interest made at each extension of the loan up to June, 1858, when the last renewal in this form took place. At that time the appellants gave their note for the sum loaned, payable in sixty days at 12 per cent interest. This note was permitted to lie over until the following December, when a settlement was had between the parties, and the appellants were found indebted to the respondent in the sum of $1,112.28. An amount equal to the previously accruing interest and usury, with a small portion of the principal sum, had been paid. At the last mentioned month, two notes were given with interest at twelve per cent., which were renewed until May, 1859, when the final renewal took place, and the notes were given upon which the judgments were entered.

The circuit court dismissed the complaint and permitted the judgments to stand as valid. The grounds of this decision are not given, and we are therefore in the dark as to the view the circuit judge took of the questions involved. However, we have not been able to bring our minds to the same conclusion, and think that the judgment is erroneous.

There will be no controversy about the correctness of the proposition, that if the notes upon which the judgments were entered were void, a court of equity will relieve against them upon equitable principles. What conditions should be imposed, and whether the appellants should be exonerated from paying anything further upon the usurious loan, is a question which will be adverted to in a subsequent part of this opinion. For the present, we shall address ourselves to the question whether the notes upon which the judgments were entered were usurious and void. Those notes were given under the

Lee et al. vs. Peckham.

law of 1859 (chap. 160), which declares that all notes, contracts and securities of whatsoever nature (excepting bottomry and respondentia bonds and contracts), whereupon or whereby there shall be *reserved, secured or taken any* greater sum or value for the loan or forbearance of any sum of money than twelve per cent. interest, whether the sum or value was secured, reserved or taken by the note or contract or otherwise, should be void. The law is in substance a re-enactment of the act of March 10, 1851, with the penalties of forfeiture prescribed by that act. And the question is, was there any usury in the transaction to which the law of 1859 can apply? It is contended that the notes executed after the law of 1859 took effect (which was on the 5th of April, 1859), were unaffected by any taint of usury which might have existed in the previous securities. That the original loan and the extensions up to December, 1858, were made upon an usurious consideration is a fact most abundantly established by the record, and was frankly admitted on the argument by the counsel for the respondent. But notwithstanding this, it is claimed that, owing to the form of the contract originally made, the manner in which this illegal interest was paid, and above all to the effect of the law of March 29th, 1856, the notes made in May, 1859, were not tainted or affected by any of the incidents of usury in the previous contracts. The reasoning by which this result is reached is in substance this. There is no immorality in the taking of usurious interest apart from the mere breaking of the statute, and therefore whenever the contract of loan can be legally separated, a court of equity at least will separate it, and enforce the promise to pay the principal sum loaned, while only the promise to pay the illegal interest will be held void. In the case at bar, it is said, the contract of loan is of a dual or twofold character—a promise to pay the principal and a promise to pay the illegal interest; and that these in their nature being separate and distinct, the contract as to the payment of the principal is valid, while that in respect to the payment of the

illegal interest was void. Particularly is this so when due effect is given to the law of 1856, which only avoided the interest, and declared the contract valid as to the principal sum, and when regard is had to the fact that in none of the notes, from first to last, was there any usury included, and though it was exacted and paid on the original loan and earlier extensions, yet the usury was paid without any agreement therefor in the note, but pursuant to an agreement outside of, foreign to and separable from the note. Therefore the notes given before the law of 1859 were given for principal alone, at a time when a contract was separable into its parts, and were not tainted or made void by usury. Consequently, these valid notes were merely renewed after the law of 1859 took effect, and the renewed notes were made upon a legal and sufficient consideration. It must be admitted that this argument is exceedingly plausible and ingenious, and liable to mislead, unless we keep our attention closely fixed upon the intention of the parties as evinced in the various transactions between them.

Usury is defined to be the taking of more interest for the use of money than the law allows. To constitute the offense, there must be an agreement, that he who has the use of money shall pay the owner of it more than lawful interest, that is, more than the law permits to be paid for the use of money. 2 Parsons on Con., 383 et seq. It is entirely immaterial in what manner or form, or under what pretense, the usury is exacted and paid; the contract will not be held good merely because upon its face and by its words it is free from taint, if substantially it be usurious. Courts look at the substance of the transaction, without regard to the shifts by which it is endeavored to avoid the provisions of the statute. Nor do courts of equity, even, as we understand the ground upon which they proceed in granting relief from usurious contracts, attempt to break up and separate such contracts into parts, so as to render one portion of the contract innocent and legal, while all the vice is thrown upon some other part. They merely say to a

debtor who makes himself plaintiff and asks to be relieved against an usurious contract, that he must first do equity, that is he must pay the sum borrowed, since in the forum of morals and conscience he owes this money to the lender. In this case we discover no evidence of an intention to make the contract of loan dual or twofold in its character—in other words, to make two distinct contracts, one for the payment of the sum loaned and one for the payment of illegal interest. Probably no such idea entered the minds of the parties. The agreement or contract is simple in its character. The respondent agreed to loan the appellants twelve hundred dollars for sixty days upon condition that at that time they would repay that sum and twenty-four per cent. interest for the use of the money. This is all there was of the transaction. In our view, it was an entirely immaterial circumstance, whether the note read that the money was to draw twenty-four per cent. interest or not. The agreement or contract of the parties was, that this should be the rate of interest, and it is the substance of the thing that is to be regarded. Nor is there any more evidence than always exists in like transactions, that the parties, when they renewed the various notes and illegal interest was paid, treated the contract as two contracts, one for the payment of the principal and one for the payment of the interest. Certain payments were made, and new notes given. But there is nothing which shows that the parties treated the principal as one thing and interest as another, or distinguished between them, or made payments which were specially applied to extinguish one item more than the other. They undoubtedly considered it as one indebtedness growing out of one contract in essence and in fact. And if the parties did not treat the contract as divisible and distinct, should the court do so, and apply the payments made to an illegal purpose? We suppose not. The court should not refine upon the transaction, or "lay hold of any pretext or argument however specious" to avoid the statute, but attach to the contract all just legal consequences. If the

parties did not treat the contract of loan as separable and distinct, if usurious interest was exacted and paid and new notes given from time to time, how can the court say that the usurious charges formed no part of the consideration of the new notes, and that they were purged of all taint of usury? Besides, no such defense seems to be relied on in the answer. That, in effect, admits that illegal interest was exacted, that various sums were paid, that settlements were made, balances found due and new securities taken therefor, thus fairly rebutting all presumption that the parties intended to keep the matters of principal and interest distinct and separate. They were undoubtedly mixed up to a greater or less degree; payments were made which were applied on the contract of loan without distinguishing whether they were always intended by the parties who made them as payments of interest as interest or not. Neither can we perceive any reason for separating the contract, dividing it into parts, growing out of the statute of 1856. It is true, that statute declares that the contract shall be valid and effectual to secure the repayment of the principal sum loaned, and avoids the interest only. It docks the interest and leaves the right to the principal unimpaired. But it does not assume to separate and divide the contract into independent or distinct engagements, and say that it shall be regarded as a promise to pay the principal and likewise a promise to pay interest, so that the taint of usury in the latter promise will not be transmitted or communicated to the former. If the contract is usurious in its inception, that statute does not purge it of this impurity or clear it from all usurious incidents. The law professes to deal with the contract as an entire thing, and declares that the obligation shall be valid to a certain extent and no farther. And if parties had usurious dealings under that law, they were subject to all the legal consequences attaching to such transactions, except that there was no forfeiture of the principal loaned. If usurious interest was paid, the borrower could recover it back in an

action for money had and received, or he could sue for treble the excess paid, or await the commencement of a suit by the lender on the contract, and then have the excess deducted. *Wood vs. Lake*, 13 Wis., 84; *Gill vs. Rice*, id., 594. So that we fail to see any reason growing out of the law of 1856, for separating the contract into parts, and holding that portion which relates to the payment of the principal unaffected by any taint or infirmity incident to an usurious loan. Hence we deem it clear that when the new notes were given under the law of 1859, they were given for the entire amount then due upon the usurious loan. The parties ascertained this sum, taking the answer for our guide, by deducting such payments as had been made, and computing the interest at the rate agreed upon. Usurious charges, interest which had accumulated upon an illegal contract, was undoubtedly embraced in the items of the account stated or balance struck, and therefore formed a part of the consideration of the notes given in May, 1859. How could it be otherwise, or what other conclusion can be adopted, when we consider the method in which the business was done? There was no purging of the contract of the illegal taint, nothing refunded or deducted for usurious interest paid, but the amount then found due was ascertained, and the notes given to secure its payment. Does not this constitute usury under the law of 1859, which condemns all contracts whereupon or whereby there is reserved, secured or taken any illegal interest? The parties well knew that illegal interest was embraced in the amounts for which those notes were given. It is utterly impossible that they should not know this, and they intended to make and in fact did make contracts for its payment. It is not a case where parties to an usurious contract mutually abandon it, and, for the purpose of relieving it from all taint, enter into a new binding contract, the borrower agreeing to pay the money actually secured. It therefore does not fall within the principle or reason of that class of cases cited on the brief of the counsel for the respondent, and

which hold such new agreement valid and binding. Nor do we think it falls within the doctrine laid down in *De Wolf vs. Johnson*, 10 Wheaton, 367. For in this case the court says: " It is very clear that the Kentucky contract must be considered as a new and substantive contract. It is governed by a distinct code of laws from the Rhode Island contract, and cannot be affected by the taint of usury which might have been transmitted to it under some circumstances, had it taken place in Rhode Island. It was then equivalent*to a payment and reloan, and no one can doubt that money paid on an usurious contract is not recoverable back beyond the amount of the usury paid." P. 393. It cannot with any justice be said that in this case there was anything like a payment and re-loan of money when the notes were given under the act of 1859. It was merely giving up usurious notes and taking new ones which secured the usury. And it is conceded that if the contract is usurious in its inception, the taint abides in it and affects it throughout all its mutations. Neither the renewal of the note nor change in the form of the contract alters the character of the original transaction. No new and substantive contract, purged of all usurious taint, has been made, as we understand the court to say in *De Wolf vs. Johnson*, was done in that case in Kentucky. It seems to us, therefore, that the doctrine of that case is not applicable to these contracts. For here, as before observed, the usurious notes were given up and new ones taken, in which the lender secured all his usury, and this too under a statute which makes any contract by which usury is secured to be paid void. And if those new securities are unaffected by any usurious taint, then, as was well observed by the counsel for the appellant, the respondent is in a much better condition under the law of 1859 than he would have been had he retained the notes taken under the law of 1856.

It follows from this, therefore, that the notes upon which the judgments were entered were void. What is the consequence,

or how far will a court of equity go, under the circumstances, in granting relief? This question is to be determined by a reference to those principles upon which a court of equity proceeds in these cases. And in the first place, we suppose it is an elementary principle, that a party resorting to a court of equity for relief against an usurious contract will be compelled to do equity. But it may be said that, by the 6th section of the act of 1859, it is provided that the court shall not require or compel the payment of the principal sum as a condition of granting relief to the borrower in any case of usurious loan forbidden by the act. This is true, and did the transaction begin and end under the law of 1859, the judgments must be set aside without conditions. But it is obvious that this section does not apply here, for this reason. The notes given under this statute were exchanged for those given under the law of 1856. By the last enactments the contracts were valid to secure the payment of the principal loaned. Now the giving of the void notes did not operate as a payment of any subsisting indebtedness. This point has been so decided by this court, and there can be no doubt that it is abundantly sustained by authority. The respondent might sue and recover on that indebtedness. In that case he would be entitled to recover the principal sum loaned, less all payments made upon the principal and for illegal interest, according to the rule established in *Wood vs. Lake* and *Gill vs. Rice, supra.* And as a court of equity has obtained jurisdiction of the cause for one purpose, it may exercise it to do complete justice between the parties. The appellants are not exonerated from the payment of the principal sum secured to be paid by the notes given under the law of 1856. This is still a subsisting indebtedness, and we think a court of equity may require it to be discharged, subject to the deductions above indicated, as a condition to setting aside the judgments, and cancelling the notes and warrants of attorney upon which they were entered.

The judgment of the circuit court is therefore reversed, and the cause remanded with directions to that court to give judgment in conformity to this opinion.