## GOODNO VS. THE CITY OF OSHKOSH.

*Statutes, repeal of.— Practice; change of place of trial for prejudice of judge.*

1. Where a statute provides that a specified section of a former statute " shall be amended so as to read as follows," etc., reciting the section in full as amended, any provision of such section not found in the new statute, is repealed. *State v. Ingersoll*, 17 Wis., 631.

2. All the provisions of such section which continue to be in force after the passage of the amendatory act, derive their force thereafter, not from the original, but from the amendatory act.

3. A repeal of the amendatory act does not revive the section as originally enacted. R. S., chap. 5, sec. 25, subd. 3.

4. Chap. 163, Laws of 1868, provides that sec. 9, chap. 123, R. S., "is hereby amended, and shall read as follows," etc., reciting the section in full, as amended. *Held*, that upon the repeal of said act of 1868, by chap. 65, Laws of 1869, the original provisions of said sec. 9, chap. 123, R. S., as well as the new provisions inserted by the amendatory act, ceased to be in force.

5. Since chap. 65, Laws of 1869, took effect, there has been no provision of law forbidding more than one change in the place of trial; and an order in this case, refusing an application for a second change of that kind, on account of the alleged prejudice of the judge (such refusal being made upon the ground that the party could not have a second change), is reversed. *Smith v. Hoyt* (14 Wis., 252), distinguished.

6. LYON, J., *dissents*, holding

(1) That the amendment of 1868, in effect, merely excepts certain cases from the general rule established by sec. 9, chap. 123, R. S., forbidding more than one change in the place of trial; and, within the decision in *Smith v. Hoyt* (14 Wis., 252), the repeal of such a statute merely operates to bring such cases again under the general law.

(2) That if it was the intention and meaning of the act of 1869 to repeal all restrictions upon changes in the place of trial for alleged prejudice of the judge, the act is in conflict with sec. 9, art. I., of our state constitution, which declares that " every person is entitled to a certain remedy in the laws for all injuries or wrongs," etc., and that " he ought to obtain justice * * completely and without denial, promptly and without delay," etc.

7. LYON, J., is also of the opinion that said sec. 9 does *not* allow a change of venue on the application of the plaintiff, after one has been granted to the defendant, or *vice versa;* but absolutely forbids more than one change in all.

APPEAL from the Circuit Court for *Fond du Lac* County.

This action was commenced in the circuit court for Winnebago county, but transferred to Fond du Lac county, on petition of the plaintiff on the ground that the judge was prejudiced. Upon the trial in that county a judgment was rendered for the the plaintiff, which was reversed on appeal. The case was never continued on defendant's application. At the first term after it was remitted from the supreme court, the defendant applied by petition for a change of venue on account of the prejudice of the judge of the circuit court for Fond du Lac county. Such application was denied, solely on the ground that a second change was not authorized by statute, although applied for by the other party.

From the order denying the application defendant appealed.

*Gabe Bouck*, for appellant, insisted that the proper construction of sec. 9, ch. 123, R. S., is, that the same party is not entitled to more than one change of venue. It does not deprive one party of the benefit of the statute because the other party has already had such change. *Heath v. Mathiew*, 19 Wis., 114. That section was enacted to prevent delays and secure to each party a fair trial, and such a construction would not be in accordance with that intention.

*Jackson & Halsey*, for respondent, contended that the statute is specific, and expressly provides that "no more than one change shall be awarded in any action;" and, even in the absence of express prohibition, but one change could be had, because the statute nowhere provides for more. That the second application is not made by the same party as the first is immaterial, since both had a hearing upon the first application as to where the case should be sent; and its being sent to Fond du Lac county without objection of either party is a decision that the cause which authorized the first change, i. e., the prejudice of the judge, did not exist there. *Heath v. Mathiew*, 19 Wis., 114; *Ewing v. Gray*, 12 Ind., 64.

DIXON, C. J.    In the edition of the statutes prepared and arranged by him, Judge Taylor starts the *quære*, whether section 9, ch. 123, R. S., providing that no more than one change of the place of trial shall be awarded in any action, has not been repealed.    2 Tay. Stats., 1425, § 11, note.    The judge refers to ch. 163, Laws of 1868, and ch. 65, Laws of 1869, as the basis of the suggestion.    The former chapter reads as follows: "Section 1.    Section nine of chapter one hundred and twenty-three (123) of the revised statutes, is hereby amended, and shall read as follows: 'Section 9.    When the place of trial shall be ·changed as provided in this chapter, it shall be changed to some county where the causes complained of do not exist, and no more than one change in the place of trial shall be awarded, *except upon the written stipulation of the parties or their attorneys, or until one or more trials shall have been had in said county.*'"    The words in italics indicate the change which was made by the amendment, and those not italicized, the statute as it stood prior to the amendment, with only the words "in any action" omitted, and which should be added at the end.    The act of 1869 is in these words: "Section 1.    Chapter 163 of the general laws of 1868, entitled 'an act to amend chapter 123 of the revised statutes, entitled of the place of trials of civil actions,' is hereby repealed."

The rule of construction enacted by statute in this state, that no act or part of an act repealed by a subsequent act of the legislature shall be deemed to be revived by the repeal of such repealing act, is well understood.    R. S., ch. 5, sec. 25, subd. 3 ; 1 Tay. Stats., 183, § 25, subd. 3.

In *State v. Ingersoll*, 17 Wis., 631, this court decided that where a statute provides that a certain section of a former statute shall be "amended so as to read as follows," etc., any provision of such section not found in the new statute is repealed.    It follows very clearly from that decision, that, whatever provision of the former statute was in force after the amendment of 1868, it was so in force because of being found

in the amendatory act, and that if all or substantially all of the former section continued to be the law, it was merely by reason of its having been copied into and re-enacted with the amendment. The original section, as an independent and distinct statutory enactment, ceased to have any existence the very moment the amendatory act was passed and went into effect, and whatever provisions of it remained as law were such solely by virtue of being again enacted in the amendment. The original section, as a separate statute, was as effectually repealed and obliterated from the statute book, as if the repeal had been made by direct and express words, and none of its provisions had been re-enacted. Such being the operation of the act of 1868, the conclusion as to the operation of that of 1869 is not difficult. It repealed the whole of the act of 1868, as well that part which re-enacted the provisions of the original section as the part which was added to those provisions. How such repeal can be severed, and said to apply only to that portion of the act of 1868 which was new, and not to affect that portion which was old or borrowed from the provisions of the previous statute, is certainly not easy to be perceived. If we are to look for the intention of the legislature in the language it employs, which is the only criterion where the language is plain, then it is not easy to see that the legislature did not intend to repeal the whole act, both that which was old and that which was new or brought in when the repealed act was passed. Such is the inevitable result by every rule of statutory construction with which we are familiar; and this court is not to go outside of the plain language of a statute to speculate upon what may have been the possible intention of the legislature, or to consider what may be the inconviences or mischief resulting from its giving effect to a statute according to its obvious import and meaning. If the legislature has made a mistake, it is for the legislature to correct it. This court has no sufficient evidence that the legislature has done so; but if it had, it has not the legislative power of correction, or to arrest the opera-

tion of laws constitutionally passed. It cannot stop the force of a repeal when the legislature has plainly and unambiguously so enacted. It would be a mighty undertaking for this court, if it had the power, to correct all the mistakes and evils of hasty and ill-considered legislation. But the court has no such power, and no disposition to usurp the functions of another co-ordinate and independent department of the government. It is quite enough for this court to answer for and rectify its own mistakes and errors, without entering upon forbidden ground to correct the supposed mistakes of others.

The case of *Smith v. Hoyt*, 14 Wis., 252, has been referred to as possibly furnishing a rule for a decision in this that the repeal of the act of 1868 did not carry with it the provisions of the previous section of the revised statutes, or that such repeal operated only to revive and restore such previous section. If this court were anxious to legislate, as, unfortunately, under the guise of construing statutes, courts have too often done, that decision would seem hardly to furnish a plausible pretext for its so doing. It seems too plainly and clearly distinguishable from the present to afford any ground for such decision. The point there held was, that where a statute merely excepts a particular class of cases from the provisions of a previously existing general law which continues to be in force, the repeal of the excepting statute operates to bring such cases again under the general law. The correctness of this rule is undoubted, and, in the present case, if the act of 1868 had been in terms and legal effect only the creation or enactment of an exception to the provisions of the previously exising section of the general law, thus leaving that section untouched and to stand of its own force as part of the general law, except as to the excepted cases, then the decision would have been applicable, and the repeal of the act would have brought all cases again under the operation of the previous section, which had all the time had an independent existence as part of the law, subject only to the exception while that lasted. But we have seen that the question here

arises under entirely different circumstances, and different rules and principles must govern, the rule of that decision being wholly inapplicable.

The court below having refused the application of the defendant for a change of the place of trial solely on the ground that no more than one such change could be awarded in the action, it follows that the order appealed from must be reversed, and the cause remanded for further proceedings according to law.

COLE, J., concurs in the foregoing opinion.

LYON, J.   I find myself unable to concur with my brethren in the conclusion which they have reached on this appeal, and will state my reasons for dissenting therefrom.

I agree that where the legislature enacts a law which is clearly repugnant to a former law, although the one last enacted purports to be an amendment of the former, it operates as a repeal of such former law, by implication. It was so held by this court in the case of *The State v. Ingersoll*, 17 Wis., 631, and again at the present term in *Chapin v. Crusen*. And under our statute (R. S., chap. 5, sec. 3), the repeal of the amendatory act will not operate to revive the original law.

But it is also a rule of statutory construction, equally well settled, that if an amendatory act which merely creates an exception or a proviso to the general terms of a statute be repealed, such statute is not thereby repealed, but remains in full force the same as though the exception or proviso thereto had never existed. The case of *Smith v. Hoyt*, 14 Wis., 252, is a marked illustration of the application of this rule. This court there considered and decided the effect of the repeal of the act of 1858, known as the mortgage stay law, which gave the defendant in an action to foreclose a mortgage *ninety* days to answer, the general statute giving him only *twenty* days. The repealing act did not, by its terms, revive or restore the former statute. It was held that the effect of the act of 1858 was to

create an exception to the general statute, and that after it was repealed, such statute remained in full force as it was originally enacted. The late Mr. Justice PAINE delivered the opinion of the court. His language is as follows: "The act of 1858 was equivalent to a proviso attached to the general rule, that it should not be applicable to foreclosure defendants. But if a proviso creating an exception to the general terms of a statute, should be repealed, courts would be afterwards bound to give effect to it according to those general terms, as though the proviso had never existed. And this could not be said to revive a repealed statute. The rule against this relates to cases of absolute repeal, and not to cases where a statute is left in force, and all that is done in the way of repeal is to except certain cases from its operation. In such cases the statute does not need to be revived, for it remains in force; and, the exception being taken away, the statute is afterwards to be applied without the exception." (p. 256.)

Applying these principles to the present case, it seems very clear to my mind that the only effect of the law of 1868, chap. 163, was to make a single exception to the restriction contained in sec. 9 of chap. 123 of the revised statutes. In form it contains two exceptions, but really but one, because it is competent, and doubtless always was, for the parties to change the place of trial of a civil action by stipulation, without the aid of a statute, unless there is some express statutory prohibition. At least this is so in all transitory actions.

If such was the effect of that law, then its repeal operated only to repeal the exception, and not the original statute, and leaves the latter in full force, relieved of the exception. Had no reference to the original statute been made in the law of 1868, but had it simply provided that where there had been one change of the place of trial, after one or more trials there might be still another such change for any of the causes specified by law, I apprehend no one will contend that the repeal of such act would carry with it the original statute, which prohibited

more than one such change in the same action.  I am entirely
unable to perceive any substantial difference in the two cases.
It seems to me that the difference is one of mere form ; and that,
in principle, the law of 1868 and the supposed enactment would
be identical.

It may not be unworthy of remark, that the act which first
gave a party the right to a change of the place of trial by swear-
ing to the prejudice of the judge, limited that right to one such
change, *by a proviso thereto*.   Laws of 1853, chap. 51.   This fact
may have some significance in determining the true char-
acter and effect of the law of 1868, in that an argument may be
drawn from it to sustain the position that, notwithstanding its
form, the only effect of it was to add a *proviso*, or create an *ex-
ception*, to the original statute.   This, however, is but a sugges-
tion, and is not pressed as an argument.

If we may be permitted to look beyond the language of the
laws under consideration, for the purpose of ascertaining the
intention of the legislature when it repealed the law of 1868, and
if, at the same time, we may indulge in the presumption (which
seems to be a reasonable one), that it did not, by such repeal,
intend to do positive injustice, I think that it can easily be de-
monstrated that the repeal of the law of 1868 was not intended
by the legislature to operate as a repeal of the original statute
which prohibited more than one change of the place of trial in
the same action.   As was stated a moment since, in 1853 it was
first enacted that whenever any person (doubtless meaning any
party to the cause) should apply, in the manner prescribed by
law in other cases, for a change of venue in any cause pending
in a court of record, on account of the prejudice of the judge of
such court, it should be the duty of the judge or court to which
the application might be made, to award such change of venue.
That law has remained in force until now, and is sec. 8 of chap.
123 of the present revised statutes.   Unlike applications made
for such change upon any of the other grounds specified by
law, applications based on the alleged prejudice of the judge

need not state any facts showing such prejudice. If the party swears that it exists, the case must be removed to some other court, although the judge whose prejudice is thus sworn to may never before have heard of the case or the parties, and although he may not have the slightest interest or bias in respect to the questions involved in the action. This law, when enacted, is believed to have been entirely anomalous, and, so far as I am advised, such is its character still. But I have made no examination to ascertain whether it has been enacted in other states. It is perhaps too late to question the policy or propriety of this legislation; but that it has been a most fruitful source of perjury and injustice, and has done much to bring the administration of justice in this state into contempt, but few will deny. It puts it in the power of any unscrupulous party to an action to perpetrate a gross wrong and outrage upon his opponent and upon the court, with perfect impunity; and both suitor and court are powerless to protect themselves from the outrage. Let it not be said that I am speaking in this matter under a sense of personal wrong, for such is not the case. But truth compels me to say that when I had the honor to preside in the circuit court, cases were not wanting to illustrate the pernicious practical operation of this law.

Previously to 1853 there was no restriction upon the right to repeated changes of venue in the same action, and none was necessary. No such change could be obtained without due proof of the existence of some proper cause therefor; and this of itself was a sufficient restriction for the protection of the rights of parties. But the legislature of 1853 evidently foresaw that the giving of the right to such change upon the mere affidavit of a party that the judge was prejudiced, without showing any facts or giving the opposite party an opportunity to controvert the existence of such prejudice, might, and probably would, lead to great abuses; and it therefore wisely added to that act the proviso before mentioned. That this right, as restricted by the law of 1853 and by the revised statutes,

has been grossly abused, and that, in the absence of any restriction upon it, it will be more grossly abused, cannot well be doubted.    Thus unrestricted, a desperate or dishonest defendant in a civil action might use it to deprive every court of record in the state of jurisdiction of an action against him, and thus prevent the plaintiff from ever bringing his action to trial.    It may be urged that a party making a false affidavit of prejudice is liable to be prosecuted and punished for perjury. Theoretically this is true.    But until at least one such case occurs, this argument has but little force.

I think it impossible, in view of the foregoing considerations, that the legislature of 1869, by repealing the law of 1868, could have intended to repeal the restriction entirely, and thus open wide the door for so much wrong and iniquity.

But if I am mistaken in all this—if the restriction is entirely repealed, and a party may have the place of trial of the action changed as often as he chooses to swear to the prejudice of the judge of the court where the same is pending—then I think the law which gives the absolute right to such change, upon filing a mere affidavit of prejudice, violates a provision of the constitution, and is therefore void.    The provision referred to is as follows: "Every person is entitled to a certain remedy in the laws, for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely, and without being obliged to purchase it; completely and without denial; promptly and without delay, conformably to the laws."    Art. I. (Declaration of Rights), sec. 9.

It would be difficult to convince an unfortunate plaintiff, who has a meritorious cause of action, and who, under the unrestricted operation of this law, had been compelled to follow his action through half of the courts of the state, with a reasonable prospect that, unless he ceased to prosecute it, he must continue to do so through the other half, and without any assurance that he will ever get it to trial, that he had "a certain remedy in the laws," and that he was obtaining justice "completely and

Goodno vs. City of Oshkosh.

without denial, promptly and without delay." I fear that he would have doubts, and I hasten to assure him that my own faith in that behalf is also weak, and I do not believe that those doubts should be imputed to us as sin.

Being of the opinion that sec. 9, ch. 123 of the revised statutes, is still in force, I cannot subscribe to the views taken of it by the learned counsel for the defendant, to the effect that it permits two changes of the place of trial of an action — one on the application of each party. The language is, "No more than one change of the place of trial shall be awarded in any action." I am aware of no rule of statutory construction which would authorize the court to interpolate the qualification contended for, and to interpret it as though it had provided that but one such change should be allowed *upon the application of the same party.*

I have thus been drawn into a much longer discussion than I intended. It is scarcely necessary for me to say that my remarks relative to abuses under the law authorizing a change of the place of trial for prejudice of the judge, have not the slightest reference to the application in this particular case. It is fair to presume that the highly respectable gentleman who verified the petition by his affidavit, honestly believes it to be true; and it is also fair to presume, in view of the high character for candor and impartiality of the learned judge of the court in which the action is pending, that such belief is not well founded.

The practical operation of the decision of the court in this case will doubtless render further legislation on the subject necessary. If some system be adopted which will protect parties to actions from being compelled to go to trial before judges who are really prejudiced against them, and at the same time correct the gross abuses incident to the present system, an important advance will thereby be made in the direction of wise and salutary legislation.

I think that the order of the circuit court denying the peti-

tion for a second change of the place of trial of the action, should be affirmed.

*By the Court.*—Order reversed.