GRAHAM and others vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

*November 10 — November 22, 1881.*

RAILROADS: EXCESSIVE FREIGHT CHARGES: REPEAL OF STATUTE: FORM OF ACTION. *(1) Tort or contract? (2, 3) Repeal of statute; effect on existing rights of action: Excessive freight charges. (4) Measure of damages.*

1. The decision on a former appeal herein (49 Wis., 532), that the amended complaint states a cause of action in *tort*, and not on contract, re-affirmed.

2. Rights of action, whether sounding in tort or in contract, which are not granted by a statute, but, while connected with the existence of the statute, result from the application of common-law principles, are not lost by the repeal of the statute.

3. Thus, where, during the existence of a statute which made it unlawful for a railroad company to charge for the carriage of freight higher rates than those prescribed in the act, plaintiff was compelled by the defendant railway company to pay higher rates, and paid them under protest, the subsequent repeal of the statute will not prevent his recovering damages for defendant's unlawful act.

4. The measure of plaintiff's damages in such a case is the amount paid in excess of the rates then allowed by law, with interest at least from the commencement of the action.

APPEAL from the Circuit Court for *Crawford* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was commenced originally for the purpose of recovering three times the excess of money paid by the plaintiffs to the defendant over and above the legal rates fixed by chapter 273, Laws of 1874, known as the Potter law, for the transportation of a large quantity of wheat from Muscoda to the city of Milwaukee, in this state. The action was commenced before the repeal of the Potter law. The defendant demurred to the original complaint, and the demurrer was sustained. The plaintiffs then amended their complaint, still making it a complaint for three times the excess of the charges under the Potter law. To this amended complaint the defendant again

demurred, and the second demurrer was sustained because the Potter law had been repealed without any sufficient saving clause to enable the plaintiffs to maintain their action for three times the excess of charges under that law.   The plaintiffs then amended their complaint a second time, claiming damages only for the amount of the charges paid over the legal rates as fixed by the Potter law.   The defendant moved to strike the second amended complaint from the files, on the ground that it changed the cause of action from one in tort for a statutory penalty to one on implied contract, which was not allowable under the statute and the decisions of this court upon the subject of amendments.   The motion was denied; defendant appealed from the order; and, on such appeal, this court affirmed the order.   *Graham v. C., M. & St. P. Railway Co.*, 49 Wis., 532.   Afterwards the defendant pleaded a general denial to the second amended complaint; the issue was tried in the court below; and the plaintiffs recovered judgment for the amount of the excess of the charges paid by them over and above those fixed by the so-called Potter law, with interest from the commencement of the action. From this judgment the defendant again appeals to this court."

*J. W. Cary*, for the appellant:

1. That the action is one sounding in tort and not in contract, is *res adjudicata*.   49 Wis., 534; *Smith v. C. & N. W. R'y Co.*, id., 448.   The recovery in the court below was not on the ground that the charge for transportation was unreasonable or excessive, but solely upon the ground that it exceeded the rates allowed by ch. 273, Laws of 1874.   An action of tort cannot be maintained for the violation of the provisions of a repealed statute.   After the repeal has taken effect, there is no law warranting such a recovery.   *Butler v. Palmer*, 1 Hill, 324; *Van Inwagen v. Chicago*, 61 Ill., 31; *Bennet v. Hargus*, 1 Neb., 419; *Bailey v. Mason*, 4 Minn., 546; *Kertschacke v. Ludwig*, 28 Wis., 430; *Beebe v. O'Brien*, 10 id., 481; *Langford v. King*, 1 Montana, 33; *Stephenson v. Doe*,

8 Blackf., 508; *Hunt v. Jennings*, 5 id., 195; *Davis v. Minor*, 1 How. (Miss.), 183; *Musgrove v. Vicksburg & Nashville R. R. Co.*, 50 Miss., 677; *Creighton v. Pragg*, 21 Cal., 115. The statute after its repeal has no longer any force or vigor. It is as though it had never been passed, except as to matters which have ripened into a contract, or suits that have been commenced, prosecuted and *completed.* Such rights stand independently of the statute, and consequently are not defeated by its repeal; but all causes of action depending upon the statute are swept away by the repealing act. The cases cited by the court in support of their opinion in *Smith v. C. & N. W. R'y Co., supra,* are all cases of contract arising under the statute. *Noyes v. The State,* 46 Wis., 250; *Wood v. Lake,* 13 id., 94; *Steamship Co. v. Joliffe,* 2 Wall., 450; *Streubel v. Mil. & Miss. R. R. Co.,* 12 Wis., 67. Had this action been in *assumpsit* on the implied contract arising from the payment under protest of the excess of charges, it might be sustained, not by force of the statute, but in consequence of the implied *assumpsit* arising under it, which would stand and exist independent of the statute. It is competent for the plaintiff to waive a tort and bring *assumpsit* in most cases; but no rule of law authorizes him to waive *assumpsit* and bring tort at his pleasure. Such a rule, if it existed, would subject the defendant to imprisonment for a matter *ex contractu.* In this case there is no breach of duty complained of, known to the law. The repeal of the statute removed all obligation to carry freight at the rate prescribed in the statute, and, in order to claim that the defendant was guilty of a breach of duty, it is necessary to reinstate the statute, and have it in existence at the present time, or when the judgment was rendered. The fact that the statute was in existence, and that a breach of duty under it arose, which gave the plaintiff an inchoate right to bring his action for such breach, and prosecute it to judgment, is not denied; but before this was accomplished, the statute was repealed, and the

breach of duty had disappeared, and with it the plaintiff's right of action in this form. 2. It was error to direct the jury to compute interest in an action of tort; and if interest were allowable at all, it could only be allowed from the time of filing the last amended complaint.

For the respondents there was a brief by *Hazelton & Provis*, and oral argument by *Mr. Provis*. After arguing that the action was never in tort, nor brought to recover for any cause in tort, but simply to recover a sum of money as compensation, they contended, 1. That the excess over the rates prescribed by the statute demanded and taken by defendant, and paid, under the circumstances of this case, by the plaintiffs, and suit brought thereon during the life of the statute, gave plaintiffs a vested right in the recovery. *Steamship Co. v. Joliffe*, 2 Wall., 450; *Smith v. Railway Co.*, 49 Wis., 443. An immediate right of action for the recovery of money, which, when recovered, is to belong to the party in whom the right of action exists, is a valuable pecuniary interest, which deserves protection equally with rights which are absolute. Such a right of action may be the subject of sale as other property. *Westervelt v. Gregg*, 12 N. Y., 202. A vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference, and falls within the prohibition that no person shall be deprived of property without due process of law. Cooley's Con. Lim., 362; *Clark v. Clark*, 10 N. H., 386; *Thornton v. Turner*, 11 Minn., 339. And this right of action no subsequent act of the legislature could divest or impair. It was competent for the legislature to repeal the law prescribing such rates, but it could not repeal the acts of the parties done under it, nor destroy the rights acquired by virtue of such acts. They were past transactions, over which the legislature had no control. *Streubel v. Mil. & Miss. R. R. Co.*, 12 Wis., 67; *Austin v. Burgess*, 36 id., 186; *State v. Atwood*, 11 id., 422; *Seamans v. Carter*, 15 id., 548. Nor was it in-

tended, in the repeal of those provisions of the act of 1874, to impair or take away any rights accrued under such provisions. The proviso itself, although insufficient to save the penalty, yet plainly shows the legislative intent to save all such rights intact. The intent is to be ascertained from the language employed. *Blunt v. Walker*, 11 Wis., 334; *Lawrence v. Vilas*, 20 id., 381; *Ogden v. Glidden*, 9 id., 46. 2. That the amount of excess taken was a sum certain, easily ascertained on the face of the complaint, and was a mere matter of computation. In such cases, whether the action sounds in contract or tort, interest may be recovered from the commencement of the action. *Shipman v. The State*, 44 Wis., 458; *Chapman v. C. & N. W. R'y Co.*, 26 id., 295. See *Van Rensselaer v. Jewett*, 2 N. Y., 135.

TAYLOR, J. Upon this appeal the learned counsel for the appellant insists: (1) That it is *res adjudicata* in this action that the second amended complaint is an action for a tort, and not upon contract, express or implied. (2) That no action for a tort can be maintained to recover such excess of charges over and above the rates fixed by the Potter law, although demanded and received while the Potter law was in force by the plaintiffs, after the repeal of such law. (3) That it was error to allow the plaintiffs interest for the amount of the excess of charges paid by them to the defendant.

I. We agree with the learned counsel for the appellant that the second amended complaint of the plaintiffs was, upon the former appeal, held by this court to state a cause of action for a tort, and not upon contract. See 49 Wis., 532, and *Smith v. Railroad Co.*, 49 Wis., 443. We are very clear that the original action to recover the penalty fixed by the Potter law was an action for a tort, and in no sense an action upon contract, express or implied. The right to recover a penalty given by statute does not rest upon contract. Its foundation is some unlawful act done by the party who is subjected to the same,

and not an express or implied promise that he will pay the penalty because he has done the wrongful act. Notwithstanding our constitution has abolished imprisonment for debt arising out of or founded upon contract, expressed or implied (article I, sec. 16, Const.), the statutes of this state have always provided, and we think properly so provided, that the defendant may be arrested and held to bail in an action to recover a forfeiture or penalty. Section 2, ch. 127, R. S. 1858; section 24, ch. 120, R. S. 1858; section 21, ch. 88, R. S. 1849. We also agree with the learned counsel for the appellant that it is *res adjudicata* in this case that the second amended complaint also states a cause of action in tort. The decision upon the former appeal is conclusive upon that question. If the amended complaint stated nothing but facts constituting a cause of action upon contract, then, according to the uniform decisions of this court, the motion made by the defendant to strike the same from the files of the court should have been granted, and the order of the circuit court refusing to do so should have been reversed instead of affirmed. See *Sup'rs of Kewaunee County v. Decker*, 34 Wis., 378.

After a careful consideration of the case as presented upon the former appeal, we are convinced that the decision in that case was correct, and that the facts stated in the second amended complaint show a tort committed by the defendant, for which the plaintiff is entitled to recover damages. The following are the material allegations of such complaint, constituting the cause of action: After stating the incorporation of the defendant, and alleging that it was a common carrier of goods and merchandise, for hire, between the places thereinafter mentioned, and that said railway was classified, in and by chapter 273 of the General Laws of this state for the year 1874, as general class A, it alleges as follows:

"That on and between the 4th day of May, 1874, and the 30th day of September, 1874, during the continuance and operation of all the provisions of said chapter 273, the plaintiffs,

as such copartners, delivered to the defendant company, at its depot at Muscoda in said Grant county, for transportation to the city of Milwaukee in the state of Wisconsin, the place of consignment thereof, certain wheat and rye in the grain, in car loads, to the amount of 2,176,410 pounds; and that the defendant received the same from the plaintiffs at its depot at Muscoda aforesaid, in car loads, for transportation, at the times aforesaid, for the plaintiffs, from said Muscoda to Milwaukee aforesaid, in car loads, over and upon that portion of its said railway situated wholly within the state of Wisconsin — the distance from said Muscoda to said Milwaukee being 152 miles and no more; all of such grain so transported being designated in said chapter 273 as special class D, and all of such grain so transported being by plaintiffs consigned to Messrs. R. Eliot & Co., commission merchants of said Milwaukee, who were authorized by plaintiffs to pay the defendant the freight charges for such transportation out of the plaintiffs' moneys received for such grain upon sale thereof.

"That for the transportation of said grain in car loads from said Muscoda to said Milwaukee, a distance of 152 miles, the defendant was prohibited by the provisions of said chapter 273 from charging or receiving a higher or greater rate of compensation than nineteen cents for each 100 pounds thereof; but that upon the arrival of such grain at Milwaukee the defendant, in violation of the provisions of said chapter 273, refused to deliver such grain to the said consignees thereof upon tender of the lawful charges for the transportation of the same as fixed by said chapter 273, to wit, the sum of nineteen cents for each 100 pounds thereof, in addition to all lawful inspection charges thereon, which sum and inspection charges the said R. Eliot & Co., as plaintiffs' agents, then and there tendered the defendant, which sum so tendered was a fair, ample and reasonable compensation for such transportation and inspection; but that the defendant then and there unlawfully demanded, extorted, charged, took and received from plaintiffs'

said agents, for the transportation of such grain for the distance aforesaid, the sum of twenty-five cents in lawful money for each 100 pounds thereof, besides inspection charges, amounting in all, for said 2,176,410 pounds so shipped, to the sum of $5,441, which sum the said R. Eliot & Co., on behalf of the plaintiffs, in order to obtain possession of such grain, paid to the defendant, under protest, out of the moneys of these plaintiffs received in payment for such grain.

"That, the said sum so unlawfully demanded, extorted, charged and received by defendant from plaintiffs' said agents for the transportation of such grain for the distance aforesaid exceeded the rates therefor prescribed by said chapter 273, and exceeded a reasonable compensation for such transportation, by the sum of six cents upon each 100 pounds of such grain so carried, amounting in all to the sum of $1,305.84, which sum was an actual excess over and above lawful and reasonable freight rates for such transportation, and was unlawfully demanded, extorted, taken and received by defendant from the plaintiffs for such transportation; that thereupon the plaintiffs duly demanded of the defendant a return and payment back of the said sum of excess over lawful and reasonable freight rates so unlawfully extorted and received for the transportation of such grain, and gave the defendant immediate notice that, on default of such payment back of such excess, suit would be brought to recover the same; to all of which the defendant gave no attention, and refused and still refuses to pay back the same or any portion thereof."

These facts, stated in the complaint, clearly show that by reason of the unlawful and wrongful acts of the defendant the plaintiffs had been compelled to pay over to its authorized agents a large sum of money which it was in no way entitled to receive for the service performed. The allegations also show that the payment of the money by the plaintiffs was not voluntary, but was coerced by the defendant, and paid over under the protest of the plaintiffs; and that they demanded the

repayment of the money, and notified the defendant that unless such repayment was made they would bring an action to recover the same.

Had this complaint closed with a declaration that, by reason of the premises, the plaintiffs had sustained damages in the sum of the excess of such charges so received by the defendant, and demanded judgment for such sum, with interest, there would have been no doubt as to the character of the action. The fact that the complaint closes with a declaration that by virtue of the premises the defendant became indebted to the plaintiffs in the sum of such excess of charges, which it refused to pay upon request, and demands judgment for such sum, with interest, we do not think changes the character of the action made by the facts before stated. This court has decided that the whole complaint must be considered for the purpose of determining what cause of action is stated or intended to be stated; and, when it is ascertained what cause of action the pleader intended to set out in his complaint, the sufficiency of the facts stated to sustain such cause of action must be determined by the court, upon a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action; and the complaint must be held bad if the facts stated are insufficient to constitute the cause of action intended to be stated, notwithstanding they may be sufficient to constitute some other cause of action. *Sup'rs of Kewaunee County v. Decker*, 30 Wis., 624. Under this rule this court held, on the former appeal in this case, that, as the original complaint was in tort, and as the second amended complaint stated facts sufficient in themselves to constitute an action for a tort, they would presume that the pleader intended to go upon the tort as his ground of action, and not upon the implied *assumpsit*. To hold that the amended complaint was intended to be an action of tort, would be consistent with the original cause of action stated, and would be a permissible

amendment. To hold otherwise would be inconsistent with the original, and not permissible.

The old common-law action for money had and received for the use of the plaintiff could be maintained in almost any case where the defendant had, by an unlawful or tortious act, become possessed of the money of the plaintiff; and in all such cases the plaintiff recovered upon a fiction of law, which in such cases presumed a promise on the part of the person who had wrongfully and unlawfully acquired such possession, to pay the plaintiff the amount thereof. In every such case the evidence would show some tort committed by the defendant, by means of which he had possessed himself of the plaintiff's money. Although under the code practice this court and others have permitted a plaintiff to allege that the defendant had received money for his use, and that upon demand he had refused to pay the same to the plaintiff, and demand judgment for the amount, and upon the trial have permitted the plaintiff to show any state of facts which would entitle him to recover the money demanded, still it would seem to be the better practice to state the facts upon which the right of the plaintiff to recover the money depends, and recover upon such facts, rather than upon the old fiction of the law. *Grannis v. Hooker*, 29 Wis., 65. No court has, I think, held under the code that a statement of facts which under the old practice would sustain an action for money had and received to the plaintiff's use, would not entitle the plaintiff to recover the same amount he would be entitled to recover had he made his claim for money received; nor that, if such facts showed that the defendant had committed a tort in order to possess himself of the plaintiff's money, such statement of facts does not state an action in tort. The fact that upon the same evidence the plaintiff might have recovered in an action upon an implied promise of the defendant, is in no way conclusive that he could not recover for the tort.

The plaintiff may waive the tort when the defendant has

possession of his money, and sue upon the implied promise to refund it; but he is not compelled to waive it in order to recover, and may, if he sees fit, recover upon the tort, and make that the foundation of his action.. When, therefore, the plaintiff, in his complaint, sets out unlawful and tortious acts of the defendant, and relies upon those acts as the foundation of his right to demand that the court should adjudge that the plaintiff recover of the defendant money unlawfully. taken from him by such unlawful and tortious acts, the action is clearly an action sounding in tort, although under the old practice he might have declared in *assumpsit* for money had and received, and have recovered upon proof of the same facts set out in the complaint.   *Cotton v. Sharpstein*, 14 Wis., 226.

We have said thus much in justification of the ruling of this court on the former appeal, for the reason that the learned counsel for the respondents, upon the argument, seemed inclined to doubt the soundness of the ruling upon that appeal, and was disposed to claim that both the original and amended complaints were actions *ex contractu*, and not because of any serious apprehension that an error had been committed in that decision.

II.   The second point made by the learned counsel for the appellant, and upon which he mainly relies for the reversal of this judgment, is, that no action of tort can be maintained for the recovery of the excess of the charges received by the appellant over and above the charges allowed by the so-called Potter law, after the repeal of that law took effect.   It is admitted that the excessive charges were received by the defendant while that law was in full force; and that it was repealed before this action was tried, and before the second amended complaint was filed.   This court has held that a right of action, whether civil, penal or criminal, expressly given by a statute, is destroyed by its repeal, unless there be a saving clause in the repealing statute which preserves the right to the

plaintiff. The repeal destroys all such rights of action, whether commenced and pending at the time of the repeal or not. *Pratt v. Brown*, 3 Wis., 603; *French v. Owen*, 5 Wis., 112; *State v. Ingersoll*, 17 Wis., 631; *Kertschacke v. Ludwig*, 28 Wis., 430; *Goodno v. Oshkosh*, 31 Wis., 127; *Chapin v. Crusen*, id., 209; *Dillon v. Linder*, 36 Wis., 344; *Rood v. Railway Co.*, 43 Wis., 146; *State v. Stone*, id., 481; *Smith v. Railway Co.*, id., 688; *Streeter v. Railway Co.*, 44 Wis., 383; *State v. Campbell*, id., 529; *State v. Van Stralen*, 45 Wis., 437; *Smith v. Railway Co.*, 49 Wis., 443.

*Rood v. Railway Co.* decides that the provision in the act which repealed the Potter law of 1874, limiting the charges of railroad companies, does not save the rights of a party who had commenced his action to recover three times the amount of the excess of charges received in violation of such act.

The rule stated in the above cases is supported by an abundance of authority in other states, by the courts of the United States and the courts of England; but they do not go to the extent of holding that all rights of action or rights to property which accrue to a party or are perfected in him during the existence of the statute, by reason of its existence, fall with the statute. Those rights of action which are expressly given by the statute and do not exist outside of the statute, are necessarily destroyed by its repeal; but rights of property or causes of action which accrue to a party and which indirectly depend upon the statute, are not necessarily destroyed by its repeal. The lawfulness of an act done depends upon the laws in force at the time it is done; and, if unlawful when done, it does not become lawful by a subsequent change of the law which renders such act lawful thereafter. *Bailey v. Mogg*, 4 Denio, 60; *Roby v. West*, 4 N. H., 285; *Jaques v. Withy*, 1 H. Bl., 65; *Fletcher v. Peck*, 6 Cranch, 87; *Conley v. Palmer*, 2 Comst., 182.

This court has enforced this rule to its full extent in cases of contracts void at the time they were made, under the usury

law and the law prohibiting a party from recovering for liquor bills. *Gorsuth v. Butterfield*, 2 Wis., 237; *Root v. Pinney*, 11 Wis., 84; *Wood v. Lake*, 13 Wis., 84; *Lee v. Peckham*, 17 Wis., 383; *Morton v. Rutherford*, 18 Wis., 298; *Meiswinkle v. Jung*, 30 Wis., 361; *Austin v. Burgess*, 36 Wis. 186. In this last case the late learned chief justice wrote the opinion, and reviewed all the cases in this court on the subject, and adhered to the former decisions as being sound upon both principle and authority. The statute of 1874 having made it unlawful for the appellant to demand or receive any greater sum for the transportation of freight than the amount fixed by that act, and section 6 of said statute having declared that any corporation evading or violating the provisions of the statute fixing rates should forfeit all claim to recover any compensation for the service rendered, and having made it a misdemeanor on the part of the agents of the corporation to refuse to transport freight for the charges fixed by the act, or upon receiving freight for transportation, to receive more than the fixed rates therefor,— there can be no doubt that it was unlawful for the appellant or its agents to demand or receive the sums demanded and received of the plaintiffs in excess of said fixed rates at the time it was so demanded and received. It follows that, notwithstanding such payment of the money by the plaintiffs to the defendant, under coercion and protest, the money so paid to and received by the defendant still remained the property of the plaintiffs, and that an action immediately accrued in favor of the plaintiffs to recover the same back again.

The learned counsel for the appellant do not contend but that the plaintiffs might recover the money in an action for money had and received, but bases his objection to the recovery on the mere form of the action. In his very able and elaborate brief he says: " A clear case of this kind would occur where a statute prescribed a certain price to be paid for services, and a person performing them should demand a higher

rate and compel its payment by withholding the property of the other. In such case, if the payment was under protest, the law would imply a promise to pay the excess, which would be a contract, and that right would remain, notwithstanding the statute fixing the price had been repealed." In this sentence the learned counsel states the exact case made by the plaintiffs. The law did fix a price for the service performed by the appellants, and made it unlawful to demand or receive a greater sum for such service. The appellant did demand a greater sum, and refused to deliver plaintiff his property until the greater sum was paid. The plaintiffs paid it under protest, and very soon thereafter commenced this action, which has finally been converted into an action to recover the amount of the money so unlawfully demanded and received.

The rule stated by the learned counsel for the appellant has been acted upon by this court in the cases of *Wood v. Lake,* 13 Wis., 84; *Lee v. Peckham,* 17 Wis., 383; *Gill v. Rice,* 13 Wis., 549; *Fay v. Lovejoy,* 20 Wis., 407; *Dole v. Northrop,* 19 Wis., 249. The court in these opinions states that the remedy of the party who has paid usurious interest is to offset it against the plaintiff's claim where the plaintiff is allowed to recover anything on the usurious demand, or bring an action for money had and received to recover it back. In the case of the voluntary payment of usurious interest it is possible that no action sounding in tort would lie to recover the money so paid. The payment being voluntary, the plaintiff could not complain of any force or wrong done by the defendant, but must rest his recovery entirely upon the unlawfulness of the act of the defendant in receiving the same in violation of the statute. These cases also settle one of the queries suggested by the late learned chief justice in *Streeter v. Railway Co.,* 44 Wis., 386,—" whether the common-law action was suspended by the substitute given by the statute."

In the cases of *Lee v. Peckham* and *Wood v. Lake* it was held, under the usury law, which expressly provided that the

person paying usurious interest might sue for and recover three times the excess of the money paid over and above the lawful interest, that the borrower might waive his right under the statute, and sue for and recover simply the excess over and above the legal rates fixed by the statute. This right of action to recover the excess paid above the legal rate of interest prescribed by the statute is not given by the statute, but is a result of the statute, and depends upon the principles of the common law for its maintenance. The statute makes it unlawful to take more than a fixed rate. All sums taken in excess of such fixed rate are unlawfully taken, and upon the principles of the common law a right immediately accrues to the person paying the unlawful excess to recover the same back. So the act of a railroad company demanding and receiving for services any sum in excess of the rates fixed by law is an unlawful act; the money is therefore unlawfully received, and, upon the principles of the common law, a right of action immediately accrues to the person who pays such unlawful charges to recover the same back again. The lawfulness of an act depends upon the state of the law at the time it is done, and, if it was unlawful then, we have seen, by the decisions of this court above cited, that no repeal of the law which rendered such act unlawful can make it lawful or valid. The plaintiffs' action to recover for the unlawful act does not depend upon the statute, except so far as the statute gives character to the act at the time it was done. The only necessity of referring to the statute at all, for the purposes of sustaining the action, is to determine whether, upon the principles of the common law, a right of action exists in favor of the plaintiffs. While the learned counsel for the appellant admits the force of this reasoning, and concedes that the party may recover when the wrongful act done under the repealed statute is of such a nature that an action upon contract may be maintained to redress such wrong, he very earnestly contends that he has no remedy if he can only enforce it

by an action of tort.  His argument seems to be based upon the idea that, because the constitution of the United States, and that of this state, provide that no law shall be passed impairing the obligation of contracts, the legislature cannot, either by the repeal of an act or by affirmatory statute, divest a party of the right to maintain an action upon a contract where the contract relation becomes once fixed between the parties, and that it makes no difference whether such contract relation arises by express compact or indirectly out of the violation of a statute.  This is undoubtedly a very satisfactory reason for holding that the repeal of a statute shall not take away any contract rights which a party has secured under it, but it seems to us it is not the only reason why such repeal cannot divest them.

As we have shown above that an act which is void by reason of the laws existing at the time it is done is not made valid by a repeal of the law, the relations of the parties and their rights arising out of such unlawful act must remain the same after the repeal as they were before, except only as to such inchoate rights of action as are expressly given by the statute.  All other rights which result from the mere existence of the statute, and do not depend for their enforcement upon its provisions, are not affected by its repeal.  To illustrate, the right to recover back money unlawfully demanded and received by the railway company for charges in excess of the legal and fixed rates, after the repeal of the statute, does not depend so much upon the fact that the relation of debtor and creditor had become fixed between the parties during the existence of the law, as upon the other fact that the company acquired possession of the plaintiffs' money by an act which was unlawful.  The repeal of the law does not purge the act of its unlawful character, and so the relations of the parties remain the same after as before the repeal — the company still retains the possession of the plaintiffs' money unlawfully.

Suppose, instead of demanding money for the charges in

excess of the legal rates, the company had demanded a horse owned by the plaintiffs, and had refused to deliver the goods until the horse was delivered to the agent of the company for its use. It seems to us very clear that under such circumstances, after demanding the horse of the company, and, probably, without any such demand, the plaintiffs could have maintained replevin to recover the possession of such horse. The grounds upon which the action would be maintained would be the unlawfulness of the company's demand of him by virtue of the provision of the law fixing the rates for service, and the title to the horse would not pass to the company, but remain in the plaintiffs. Would a repeal of the statute, either before or after suit brought by the owners of the horse, bar their right to recover his possession in an action of replevin? We are clearly of the opinion that it would not. The legislature has no more power to transfer my property, or my title to property, to another without my consent, than it has to destroy the obligations of my contract with another.

Suppose a railroad company should, in violation of the existing law, run at an unlawful speed through a city, or fail to ring the bell at a public crossing, and by reason of such unlawful running or neglect to ring the bell a citizen should be run over and seriously injured: would the repeal of these statutory provisions affect the injured party's right to recover for his injuries? We think, under the decisions of this court, which hold that an act which is unlawful by statute when done cannot be made lawful by a subsequent repeal of such act, such repeal could not affect the party's right of action. Notwithstanding the repeal, the fact would remain that the act which caused the injury was unlawful, and therefore a sufficient ground for the maintenance of the action.

Suppose, again, in the case at bar, the plaintiffs, instead of paying the charges demanded in excess of the legal and fixed rates, had tendered to the company the amount due according

to the rates fixed by the statute, and demanded the delivery of their goods, and upon refusal had brought an action of replevin to recover their possession: would the repeal of the law fixing such rates pending the suit abate the action? After the tender of the legal rates, the right of property and the right to the possession would both be vested in the plaintiffs, and no subsequent repeal of the act could take away such right.

Very many other cases might be suggested where the rights of the parties would be fixed at the time of the act done, which would be wholly unaffected by the repeal of the statute, and still, in some sense, the rights of the parties would depend upon the statute for their existence. As instances, suppose a passenger on a train should be ejected because he refused to pay a greater fare than by law he was required to pay; or suppose he were refused admittance unless he paid a greater fare than the law allowed. Would his right of action to recover for the assault in ejecting him from the cars, or to recover damages for being refused admittance, be barred by a repeal or change of the law fixing the rates of fare for passengers? We are clearly of the opinion that it would not. Yet it is true that in each case the repealed law would be in one sense the foundation of his action; not in the sense that the statute gives the right of action, but because the statute would have to be referred to for the purpose of showing that the act of the company was unlawful at the time it was done. We think that causes of action which are not dependent upon the provisions of the statute for their maintenance, but which, according to the principles of the common law, accrue to a party by reason of the violation of the provisions of a statute when in existence, are not affected by its repeal, and that it is immaterial whether the action be in form an action for a tort or an action upon contract. *Hubbard v. Brainard*, 35 Conn., 563; *White v. Hart*, 13 Wall., 646; Hardcastle on the Construction and Effect of Statutory Law, 217, 218; Maxwell, Interpretation of Statutes, 379; Sedgwick on Construction of Con. and Stat.

Law, 112; *The Steamship Co. v. Joliffe*, 2 Wall., 450; Monograph, 18, 19 — Cooley, Effect of a Change of the Law upon Rights of Action and Defenses.

If the rule contended for by the learned counsel for the appellant were the true rule, we should be led to this absurdity. If the plaintiff brought his action upon the implied promise to return the money unlawfully received, he could recover notwithstanding the repeal of the statute, although, in order to sustain his claim to the money, he would have to show by his evidence on the trial the existence of the repealed law and the unlawful acts of the company under such law; but, if he set out in his complaint the facts which would entitle him to recover the money unlawfully taken by the company, and which in any case he must prove in order to recover, and demanded judgment for the amount of the money so unlawfully taken, he could not recover. In either case the facts required to be proved in order to entitle the plaintiff to recover would be identically the same; and we can see no reason for holding that in one case the plaintiff could recover, and in the other he could not.

III. We see no objection to the recovery of interest on the amount of money due from the appellant. Had the action been an action for money had and received, there could be no doubt as to the plaintiff's right to interest, not only from the date of the commencement of the action, but from the time when they demanded payment. The amount was certain and liquidated, or could be made so by a simple calculation. See *Lusk v. Smith*, 21 Wis., 28; *Yates v. Shepardson*, 39 Wis., 173.

In an action of tort for the wrongful and unlawful conversion or destruction of personal property, the measure of damages is the value of the property at the time of the conversion or destruction, with interest on that value. *Dean v. Railway Co.*, 43 Wis., 305; *Chapman v. Railway Co.*, 26 Wis., 295. There is no reason why the rule should not apply to an action

to recover money unlawfully received, or money wrongfully converted to the use of the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.

CASSODAY, J., took no part.