Parsons, C. J.
The plaintiff’s counsel have insisted that post obiit contracts are not void, as against the policy of the law; and that they are not to be relieved against in equity, if made without fraud or imposition : that in this case the verdict has negatived any fraud or imposition; (a) and, therefore, that equity would not relieve, unless an advantage was taken of the necessity of the heir by the plaintiff; and then the heir is relieved on the equitable condition of his repaying the consideration money with interest; that the question before the Court is a question at law, and ought not to be decided upon principles by which courts of equity are governed: and that if it was so, judgment ought not to be arrested, because then the plaintiff would lose the consideration and interest, which equity would give him.
On the other side, the defendant’s counsel have strongly insisted that a contract of the description of that before the Court is void at law; being repugnant to principles of public policy, as destructive of family interests, and of the necessary dependence and subordination of children to a parent, or of the heir to his ancestor.
The cases cited by both parties in this cause, as well as those into which we have looked, have been chancery decisions; and, therefore, it is supposed by the plaintiff’s counsel that they are not authorities to influence the determinations "to be made by a court of law.
*This position cannot be admitted as universally true. [*118] Chancery, from the nature of its jurisdiction and powers, may grant specific remedies for wrongs, not within the reach of a court of law. But when the proceedings in equity are founded upon principles of public policy, that same policy ought to prevail in courts of law; that the measure of right may be the same in each court, although the remedies for a violation of right may be different. And we do not recollect a contract, which is relieved against in chancery, as originally against public policy, which has been sanctioned in courts of law, as legally obligatory on the parties. For although it has been said in chancery, that marriage brokage bonds are good at law, but void in equity, yet no case has been found at law, in which those bonds have been hoi den good. And we are satisfied that when chancery has relieved against a contract on principles of public policy, those principles ought to *100 have their full weight in courts of law; although, to attain justice, the remedy must be according to the course of the common law. (b)
Arguments drawn from considerations of public policy, have, and ought to have, great weight, both in equity and at law. As fraud may be a public mischief as well as a private wrong, in both cases equity will relieve against it; and I know not that in any case the law will give it a sanction. In a fraudulent contract, deceit may be practised on a party to the contract; in which case neither at law nor equity is he bound by such contract. Or the deceit may not be on either party to the contract, but on third persons; and if the deceit on third persons will operate as a public mischief, neither equity nor law will support the contract.
Thus marriage brokage bonds, which are not fraudulent on either party, are yet void, because they are a fraud on third persons, and are a public mischief, as they have a tendency to cause matrimony to be contracted on mistaken principles, and without the advice of friends ; and they are relieved against as,a general mischief, for the sake of the public.
[*119] *Upon this principle bargains to procure offices are rescinded, not on account of fraud on either of the parties; but for the sake of the public, because they tend to introduce unsuitable persons into public offices.
Another case, where the deceit is upon persons not parties to the contract, is a deceit on a father or other relation, to whom the affairs of an heir, or expectant, are not disclosed; so that they are influenced to leave their fortunes to be divided amongst a set of dangerous persons and common adventurers, in fact, although not in form. This deceit is relieved against as a public mischief, destructive of all well-regulated authority or control of persons over their children, or others having expectations from them ; and as encouraging extravagance, prodigality, and vice. (9)
From the forms of proceeding in courts of equity, it must be admitted, that these principles may often be more correctly applied there than in courts of law. Chancery may compel a discovery of facts, which a court of law cannot; and from facts disclosed, a chancellor, as a judge of. facts, may infer other facts, whence deceit, public or private, may be irresistibly presumed. Whereas at law fraud cannot be presumed, but must be admitted or proved to a jury.
*101 But when a court of law has regularly the fact of fraud, admitted or proved, no good reason can be assigned why relief should not be obtained there; although not always in the same way in which it may be obtained in equity, (c)
A case, in which an heir or expectant is frequently relieved against his own contract, is a post obiit bond. This is an agreement, on the receipt of a sum of money by the obligor, to pay a larger sum, exceeding the legal rate of interest, on the death of the person from whom he has some expectation, if the obligor be then living. This contract is not considered as a nullity; but it may be made on reasonable terms, in which the stipulated payment is not more than a just - indemnity for the hazard. But whenever an advantage is taken of the necessity of the obligor, to induce him to make this contract, he is relieved, as against an unconscionable * bargain, on payment of the principal and in- [ * 120 ] terest. This contract may be made on data, whence its reasonableness may be ascertained ; for the lives of the obligor, and of the person on whose death the payment is to be made, are subject to be valued, as is done in insurances upon lives. But the covenant declared on, in the case at bar, is not in the nature of a post obiit contract.
Another case, in which an heir is relieved, is when he is entitled to an estate in reversion or remainder, expectant on the death of some ancestor or relative, and he contracts to sell the same for present money. All these cases are not relieved against as fraudulent; because a reasonable and sufficient consideration may be paid, as ascertained by the annual value of the estate, and of the intervening life. But as in post obiit contracts, when an advantage is taken by the purchaser of the necessity of the seller, he will be relieved against the sale, on repaying the principal and interest, and sometimes paying for reasonable repairs made by the purchaser. This relief is granted on the ground that the contract of sale was unconscionable.
In unconscionable post obiit contracts, courts of law may, when they appear, in a suit commenced upon them, to have been against conscience, give relief by directing a recovery of so much money only, as shall be equal to the principal received and the interest, (d) But in sales of remainders and reversions, by grants executed, T *102 know of no relief that courts of law can give, unless the grants shall appear to have been fraudulently obtained of the grantor; in which case the fraud will vitiate and render null the grants so infected.
The contract before us is not a sale of a remainder or reversion; but is different from any noticed in the reports that have been cited. There is one case of a contract between presumptive heirs, respecting their expectancies from the same ancestor. It is the case of Buckley vs. Newland. (10) The parties had married two sisters, presumptive heirs of Mr. Turgis. The husbands agreed [*121 ] that whatever * should be given by Mr. Turgis should be equally divided between them. After Turgis’s death, the defendant, who had the greater part given to him, was compelled to execute the agreement. The reciprocal benefit of the chance was a sufficient consideration. The tendency of the agreement was to guard against undue influence over the testator; and it could not be unreasonable to covenant to do what the law would have done, if Turgis had died intestate.
The covenant declared on, in the case at bar, is an agreement by an heir, having two ancestors then living, an uncle and an aunt, that if he survive them, or either of them, he will convey to a stranger one third part of all the estate, real and personal, which shall come to him from those ancestors, or either of them, by descent, distribution, or devise. And it is found by the jury, that this contract was not obtained from the heir by the fraud of the purchaser. If, therefore, this covenant is void, it must be on the principle, that it is a fraud, not on either of the parties, — for that the jury have negatived,— but on third persons, not parties to it, productive of public mischief, and against sound public policy. If the contract has this effect, it is apparent to the Court from the record ; the whole contract being a part of the record. And that a contract of this nature has this effect, we cannot doubt.
The ancestor, having no knowledge of the existence of the contract, is induced to submit his estate to the disposition of the law, which had designated the defendant as an heir. The defendant’s agreement with the plaintiff is to substitute him as a co-heir with himself to his uncle’s estate. The uncle is thus made to leave a portion of his estate to Boynton, a stranger, without his knowledge, and consequently without any such intention. This Lord Hardwicke calls a deceit on the ancestor. And what is the consequence of deceits of this kind upon the public? Heirs, who ought to be under the reasonable advice and direction-of their ancestor, who has *103 no other influence over them than what arises from a fear of his displeasure, from which fear the heirs * may be in- [ * 122 ] duced to live industriously, virtuously, and prudently, are, with the aid of money speculators, let loose from this salutary control, and may indulge in prodigality, idleness, and vice; and taking care, by hypocritically preserving appearances, not to alarm their ancestor, may go on trafficking with his expected bounty, making it a fund to supply the wastes of dissipation and extravagance. Certainly the policy of the law will not sanction a transaction of this kind, from a regard to the moral habits of the citizens.
But when it is considered that a contract of this kind is a mere wager, in a case where there are no principles, by which the value of the chances may be estimated, so as to ascertain whether it be unconscionable or reasonable; and, therefore, if valid in any case, it may be valid in all cases; public policy has additional inducements to discountenance it, as dangerous to good faith and fair dealing.
That such is the nature of this contract, is manifest by consid ering the terms of it. It is true the comparative value of the lives of the uncle and nephew may be estimated. But there is no rule for estimating the estate which the uncle may leave. After the contract he may be unfortunate and lose his property; or he may acquire a much larger estate. But if the estate, of which he should die seised and possessed, could be known, what is the rule for calculating whether he will die intestate or not ? or if he should' make a will admt estate he would devise to the nephew ? the nephew, when the contract is made, may be a co-heir; and afterwards the other co-heirs may die, leaving him the sole heir. Without pursuing the nature of the contract further, it is most manifest, that it must be a desperate wager on one side or the other; and, as such, ought not to be countenanced, as the foundation of an action.
It is, therefore, our opinion, that this contract by an heir to convey, on the death of his ancestor, living the heir, a certain undivided part of what shall come to the heir by descent, distribution, or devise, is a fraud on the ancestor, productive of public mischief, and void as well at law as in equity, (e)
* Believing this contract void at law, we cannot treat it [ * 123 ] as an unconscionable bargain, in which the plaintiff may recover as damages the money he has paid, with the interest. Nor do we decide that the plaintiff cannot, in another action, recover *104 back that money, with the interest, as money paid, not fraudulently, but fairly, on a consideration which has failed.
The judgment must be arrested, and the defendant recover his costs. (11) (f)

 [F* aud and imposition in obtaining the execution of the instrument only, such as misrepresentation of the contents of it, for instance, could be given in evidence on the plea of non est factum. — Balden vs. Davies, 2 Hall. 433. —Vrooman vs. Phelps, 2 Johns. 177. — Dorr vs. Munsell, 13 Johns. 430. -—Franchot vs. Leach, 5 Cowen. 506. — Jackson vs. Hills, 8 Cowen, 290. — Edwards vs. Hoskins, 1 Tyrw. 182.— Gilb Ex. 162. — Harmer vs. Rowe, 6 M. & S. 146.— Ed.]

 [The learned judge seems to have entirely mistaken the principles upon which courts of equity grant relief, (Evans vs. Bicknell, 6 Ves. 184,185,186,) as well as the rules of the common law — Ed.]

 1 Atk. 351, 352, 353, Chesterfield & Al., Executors, vs Jansen

 [A court of law grants no relief in these cases of constructive fraud; but only in such cases of actual fraud as render the contract or transaction void, or a nullity. >—Ed.]

 [Courts of law can grant no equitable relief in such case. If the contract be not absolutely void, they can only enforce it according to its terms; and if it be void, they must disregard it in toto. — Ed.]

 2 P Will. 182.

 [The learned judge seems not to have adverted to the distinction between constructive fraud, which vitiates contracts in equity, and actual fr.aud, which renders tiieui void at law. — Ed.]

See 1 D.& E. 732, Shove vs. Webb. — 6 East's Reports, 241. Scurfield vs. Gowland.

f) [The contract was undoubtedly good at the common law, and voidable only in a court of equity. — Ed.]