McAdam, Ch. J.
We agree with all the learned trial-judge has written in regard to the sacred character of the marital relation, and approve of all he has said in condemnation of matrimonial agencies, and have only to regret *405 that he did not give practical effect to his views by requiring the defendant, as the proprietor of one of these obnoxious bureaux, to refund to the plaintiff the money he exacted from the plaintiff’s assignor, contrary to the policy of our law. The trial judge held that the plaintiff’s assignor was equally guilty of a legal wrong with the defendant, and that she could not, therefore, recover. He seemed to think that allowing a recovery would be to sanction and encourage matrimonial agencies. We think the most effectual way of breaking up such institutions is to compel the proprietors thereof to disgorge every dollar they receive from, their victims.
We are aware of the maxim, In pari delicto, melior est conditio posidentis, but in applying the rule it is necessary to ascertain whether, under the given circumstances, the delinquency attaching to each of the principal parties is really equal in degree, for courts, both of law and equity, have held that two parties may concur in an illegal act with-, out being deemed to be in all respects in pari delicto. Brown’s Maxims, (7th Am. ed.), 728, 729.
Sound morality is the corner-stone of the social edifice, yet the law has wisely distinguished between the seducer and seduced, and between the gambling and the lottery shop keeper, card monte player, capper-in, buncy-steerer and mock auctioneer on the one hand, and their victims on the other. It has discriminated in favor, of the borrower against the usurious lender, striking in all the cases at the root of the evil, in an endeavor to extirpate it, in all cases punishing the criminals, but in none of them denying justice to the confiding and defrauded victims. These instances at least show the tendency of public policy. The matrimonial agent does not occupy a much more favorable position in the eyes of the law that the individuals before referred to,' for money and property obtained by him are treated as having been procured by a. species of constructive fraud (Story’s Eq. Jur., sec._ 260), and upon this theory, bonds and conveyances given in furtherance of marriage brokage contracts have been canceled by the courts and recoveries allowed compelling the return of moneys paid under them.
Judge Story says: “ The public policy of thus protecting ignorant and credulous persons from being the victims of secret contracts of this sort would seem to be as perfectly clear as any question of this nature well can be, and the surprise; is, not that the doctrine should have been established in a refined and enlightened country, but that its propriety should ever have been made matter of debate.” Story •supra, section 262. The ground upon which courts interfere in cases of this sort is not upon any notion of damage to the particular individual, but from considerations of public *406 policy (id. sec. 261), that is to protect others by checking the vice, or, as Chief Justice Parsons, in Boynton v. Hubbard (7 Mass., 112), states it, “Marriage brokage bonds, which are not fraudulent on either party, are yet void, because they are a fraud on third persons, and a public mischief, as they have a tendency to cause matrimony to be contracted on mistaken principles and without the advice of friends, and they are relieved against as a general mischief for the sake of the public.” Willard, in his work on Equity Jurisprudence (at page 210), says: “Nor will the court only decree a marriage brokage bond to be delivered up, but a gratuity of fifty guineas, actually paid, to be refunded.” See, also, Smith v. Bruning (Part 1 of 2 Vern. Rep., 392).
Judge Story also holds that money paid upon marriage brokage contracts may be recovered back in equity. Story’s Eq. Jur., § 263. If equity may relieve against such contracts by requiring brokage bonds and conveyances to be canceled, courts of law may award money judgment against the marriage broker to the extent of the money wrongfully received and withheld by him. The right to recovery in either forum is the same, the remedy only different. If a plaintiff cannot by a common law action enforce a return of money received, because the contract is against public policy, then she can have no relief in a court of equity for the same reason. In the application of the principles of equity, the courts follow the rules of- the law, and it is only where the law is ineffectual to afford the peculiar relief demanded, that equity gives redress. While a common law court may give a money judgment it cannot declare void a marriage brokage bona or conveyance, and hence recourse to equity in such a case is necessary. A court of equity would, however, have no jurisdiction of the present action, which is of legal cognizance and properly brought in this court. Code, §§ 69, 315. It is exclusively for money. No equitable relief is sought and none needed.
■ Leake, in his Law on Contracts (p. 407) says: “Whilst an illegal agreement remains executory, the party who has paid money as the consideration of it may repudiate the agreement and reclaim the money,” and further on says: “ There are some cases where a person having paid money as the consideration for an illegal contract, which has been executed, is, nevertheless entitled to reclaim the money on the ground that he is not equally guilty {in pari delicto) with the other party to the illegal agreement, who has received the money.” The contract sued upon was executory, but. even if it had been fully executed, we think the plaintiff’s assignor was entitled to the return of her money, *407 as the defendant acquired no title whatever to it. We think the plaintiff’s assignor was tricked by the defendant into the belief that he would procure for her the husband she wanted; that he has by improper influences obtained from her fifty dollars, which he.has no legal right to retain, and that the plaintiff is entitled to a judgment for the amount so withheld. Money and property received by matrimonial agents are, in legal effect, obtained by constructive fraud, trick and device, and when received, as in this case, from a poor, confiding and deluded woman, it would be almost & travesty on justice for a court to refuse to hear her complaint, and compel the wrong-doer to disgorge the fruits of his wrong.
Indeéd, the courts have gone so far in condemning the defendant’s nefarious business as to call marriage brokage contracts a sort of kidnapping into a state of conjugal servitude. Drury v. Hooke, 1 Vern., 412. The marriage broker is the kidnapper, his client the victim. To hold that she is in pari delicto with the kidnapper is a misapplication of the term. The relation of the parties is more like-that of the spider and the fly, as told in the old nursery rhyme.
We think the plaintiff ought to have had a verdict at the trial term for the return of her deposit, as so much money had been received to and for her use, and for this reason-the judgment directed in favor of the defendant must be reversed and a new trial ordered, with costs to abide the event.