JOHN A. K. DUVAL, Appellant, *v.* HORACE B. WELLMAN, Respondent.

Although a court of equity will not, as a general rule, lend its aid to either of the parties to an illegal contract, by enforcing its execution or rescinding it, when the parties are not equally guilty, and when the public interest is advanced by allowing the more excusable of the two to sue for relief, the courts will take cognizance of an action for that purpose, and will grant relief by setting aside the contract and restoring the injured party to his original position.

To establish a defense in such an action, it is not sufficient for defendant to show merely that the plaintiff is *particeps criminis*, but it must appear that they were *in pari delicto*, unless the contract be *malum in se*.

In an action to recover back money paid by plaintiff to defendant, who carried on a business known as "a matrimonial bureau," on an agreement by him to procure a husband for her; he to return the money paid on a day named, if at that time she was willing to give up all acquaintance with gentlemen introduced to her by defendant, there was no evidence of actual over-persuasion or undue influence. The court held, as a legal conclusion, that the contract was illegal, and that the parties to it were equal in guilt, and directed a verdict for defendant. *Held*, error; that while the contract was illegal, at most the inferences to be drawn from the facts as to the equality of guilt were for the jury.

*It seems* that the business of promoting marriages is against the policy of the law and public interest, and the courts will aid a party who has patronized such a business by relieving him or her from all contracts made, and will grant restitution of any money paid or property transferred.

*It seems* also that contracts by one party to procure, for a consideration, a husband or wife for the other, are considered as fraudulent in their character, and the party paying the consideration will be regarded as under a species of imposition or undue influence.

(Argued December 12, 1890; decided January 14, 1891.)

APPEAL from order of the General Term of the Court of Common Pleas for the city of New York, made May 4, 1888, which reversed an order of the General Term of the City Court, which reversed an order of the Special Term of said court denying a motion for a new trial.

This action was brought to recover back moneys paid by plaintiff's assignor to defendant upon contracts set forth in the opinion, in which the material facts are also stated.

*Wm. H. Mundy* for appellant. The contract is void as against public policy, but the parties are not *in pari delicto,* and the money paid thereunder can be recovered. (*Smith* v. *Bruning,* 2 Vern. 392; 1 id. 89, 90 ; *Boynton* v. *Hubbard,* 7 Mass. 118; *Goldsmith* v. *Bruning,* 1 Eq. Ab. 89; 1 Fonblanque's Eq. chap. 4, § 1; 1 Story's Eq. Juris. §§ 261, 262, 263, 268; *Crawford* v. *Russell,* 62 Barb. 93; *Marx* v. *McGlynn,* 88 N. Y. 357.)

*R. W. Newhall* for respondent. Plaintiff and defendant being *in pari delicto,* no action can be maintained by one against the other. (2 Kent's Comm. 591; 57 N. Y. 528.) Money paid by one party in furtherance of a contract in violation of law, or of public policy, cannot be recovered back where both parties are *in pari delicto.* Courts will not interfere to relieve a participant in an illegal transaction. (*Pepper* v. *Haight,* 20 Barb. 429; *Otis* v. *Harrison,* 36 id. 210; *Pease* v. *Walsch,* 7 J. & S. 514; *Stephs* v. *Gould,* 9 N. Y. 520; *Schermerhorn* v. *Talman,* 14 id. 94, 102, 126, 141; *Tracy* v. *Talmage,* Id. 162, 181; *Mosely* v. *Mosely,* 15 id. 334; *Knowlton* v. *E. S. Co.,* 57 id. 518, 528; 17 Hun, 749; Greenl. on Ev. § 111; *Knowlton* v. *C. E. S. Co.,* 17 Hun, 479.) There is not a particle of evidence of any deceit, fraud, false pretenses, false or misrepresentations by the defendant to induce Mrs. Guion to pay him this $50, or any money, or even to place her name upon his books, so that she cannot claim a repayment of this money on the ground that she is not *in pari delicto* by reason of any fraud. (*Crawford* v. *Russell,* 62 Barb. 92; Willard on Eq. Juris. 209–213; Smith on Cont. 189, 190; *Schroeppel* v. *Corning,* 2 Den. 236; *Smith*

v. *Bromly,* 2 Doug. 670; Chitty on Cont. 634, 635; Addison on Cont. 235, 236; *Williams* v. *Hadly,* 8 East, 378; 2 Comyn on Cont. 113, 117, 119; *Howson* v. *Hancock,* 8 Dumf. & East, 577; *Jacques* v. *Golightly,* 2 Wm. Black, 1073; *Browning* v. *Moris,* Cowp. 790; *Mount* v. *Waite,* 7 Johns. 434; *Smith* v. *Cuff,* 6 M. & S. 160; *Reynell* v. *Sprye,* 13 East. 74; Broom's Leg. Max. 327; Story's Eq. Juris. 300; *Clark* v. *Shea,* Cowp. 197.) Mrs. Guion did not part with her money without consideration. (*Pellecat* v. *Angell,* 2 C. M. & R. 311; *Woodworth* v. *Bennett,* 43 N. Y. 276; *People* v. *Stephens,* 71 id. 556.) There was no rescission of this contract, or the first part of it, which is directly the subject of this action, neither was the action brought in disaffirmance of it. On the contrary, it is brought in affirmance of it, for it claims exactly what the contract was intended to give. (*Peck* v. *Burr,* 10 N. Y. 298; *Nellis* v. *Clark,* 4 Hill, 424; *Woodworth* v. *Bennett,* 43 N. Y. 273: *Knowlton* v. *C. & E. S. Co.,* 57 id. 518.)

BROWN, J. The record before us does not contain the pleadings, and we are not informed of the grounds upon which the plaintiff therein based his right to recover. The case has, however, been disposed of in defendant's favor in the court below on the ground that the contract between the parties, upon which the money was paid, was illegal, and that the plaintiff's assignor was *particeps criminis,* and equal in guilt with the defendant.

But whether the cause of action was based upon the contract, or upon the illegality of the contract, and in disaffirmance thereof, does not appear.

The questions discussed in the lower courts have, however, been regarded as of sufficient importance to receive the consideration of this court, and as they were the only ones discussed at our bar, we may confine our observations to them without regard to the particular issue made by the pleadings.

It appears from the evidence that the plaintiff is the assignee of Mrs. E. Guion, a widow lady, who, in her search for a hus-

band, sought the advice and aid of the defendant, who was the owner and publisher of a matrimonial journal called "The New York Cupid," and the proprietor of a matrimonial bureau in New York city.

Mrs. Guion's testimony was to the effect that in June, 1886, she became a patron of the defendant's establishment, and paid the usual registration fee of five dollars. That she was introduced to thirty or forty gentlemen, but found none whom she was willing to accept as a husband, and that in June, 1887, for the purpose of stimulating the defendant's efforts in her behalf, she paid him fifty dollars, whereupon there was executed the following instrument:

*"June 2nd,* 1887.

"Due Mrs. Guion from Mr. Wellman fifty dollars ($50.00), Aug. 15th, if at that time she is willing to give up all acquaintance with gentlemen who were introduced in any manner by H. B. Wellman. If Mrs. Guion marry the gentleman whom we introduce her to, an additional fifty dollars ($50.00) is due Mr. Wellman from Mrs. Guion.

"(Signed.)          H. B. WELLMAN.
"E. GUION."

In August, 1887, Mrs. Guion, not finding a congenial companion among any of the men to whom she had been introduced and claiming to be willing to give up all acquaintance with them, demanded from defendant the return of the money paid, which, being refused, the claim was assigned to plaintiff and this action was commenced.

The five learned judges who have delivered opinions in the case have agreed that the contract between the parties was void, and this conclusion appears to be amply supported by authority. (1 Story Eq. Jurisprudence, §§ 260–264; 2 Pomeroy Eq. Jurisprudence, § 931; Willard's Eq. Jurisprudence, 211; Bacon's Abridgement, Title Marriage & Divorce, D.; Fonblanque's Eq. Ch. I, § 10; *Boynton* v. *Hubbard,* 7 Mass. 112; *Crawford* v. *Russell,* 62 Barb. 92.)

Judge STORY, after discussing the grounds upon which courts of equity interfere in cases of this kind, says: "It is

now firmly established that all such contracts are utterly void as against public policy * * *," and Chief Justice PARSONS said, in *Boynton* v. *Hubbard* (*supra*), that "these contracts are void * * * because they have a tendency to cause matrimony to be contracted on mistaken principles and without the advice of friends, and they are relieved against as a general mischief for the sake of the public."

The doctrine that marriage brokerage contracts are void is the outgrowth of the views and opinions of the English people upon the subject of the marriage relation, and the courts of England, for upwards of a century, have universally declared that the natural consequences of such agreements would be to bring about ill-advised, and, in many instances, fraudulent marriages, resulting inevitably in the destruction of the hopes and fortunes of the weaker party, and especially of women, and that every temptation in the exercise of undue influence in procuring a marriage should, therefore, be suppressed. The defendant has, however, succeeded in the lower court upon the application of the rule that a court will not lend its aid to either of the parties to an illegal or fraudulent contract, either by enforcing its execution if it be executory, or by rescinding it if it be executed.

Public policy has dictated the adoption of this rule, but it has its limitations, and when the parties are not equally guilty, or when the public interest is advanced by allowing the more excusable of the two to sue for relief, the courts will aid the injured party by setting aside the contract and restoring him, so far as possible, to his original position. (1 Pomeroy's Equity, § 403 ; 1 Story's Equity, § 300.)

It is not sufficient for the defendant to show merely that the other contracting party is *particeps criminis*, but it must appear that both are equal in guilt unless the contract be *malum in se*, in which case the maxim *Ex dolo malo non oritur actio* is of universal application.

This subject received very full consideration in the case of *Tracy* v. *Talmage* (14 N. Y. 162), and it was there said that unless the parties are *in pari delicto* as well as *particeps*

*criminis,* the courts, although the contract is illegal, will afford relief to the more innocent party.

Upon the application of this doctrine, in *Mount* v. *Waite* (7 Johns. Rep. 433), premiums paid for the insurance of lottery tickets were recovered, the plaintiff being held not to be equal in guilt with the defendants.

In *Wheatan* v. *Hibbard* (20 Johns. Rep. 290) it was held that usurious interest paid by a borrower could be recovered independent of the statute, and that the maxim *inter partes in pari delicto potior est conditio defendantis* did not apply, as the law considered the borrower the victim of the usurer, and Lord MANSFIELD laid down the rule that in transactions prohibited by statute for the protection of one set of men from another set of men the parties are not *in pari delicto.* (*Browning* v. *Morris,* 2 Cowp. 790. See also *Schroeppel* v. *Corning,* 6 N. Y. 107–115, 116.)

It will appear from an examination of the authorities upon this subject, a very few only of which are cited, that courts, both of law and equity, have held that two parties may concur in an illegal act without being deemed in all respects *in pari delicto.*

In many such cases relief from the contract will be afforded to the least guilty party when he appears to have acted under circumstances of imposition, hardship, or undue influence, and especially where there is a necessity of supporting public interests, or a well settled policy of the law, whether that policy be declared in the statutes of the state or be the outgrowth of the decisions of the courts.

Accordingly many cases may be cited where relief has been granted from contracts which partook of the character of marriage brokerage agreements. The cases are collected in Pomeroy's Equity Jurisprudence, in a note to section 931; in Fonblanques Eq. (B. I, ch. 4, §§ 10, 11), and Bacon's Abridgment, Title Marg. and Divrs. (541 *et seq.*), and need not be cited here.

In two of the cases referred to, money paid under the contract was recovered back. (*Smith* v. *Bruning,* 2 Vern. 392; *Goldsmith* v. *Bruning,* 1 Eq. Cases Abr. 89.)

The question in this and kindred cases, therefore, must always be whether the parties are equal in guilt. Obviously cases might arise where this would clearly appear and where the court would be justified in so holding as a matter of law, as where there was an agreement between two, having for its purpose the marriage of one to a third party, the parties would be so clearly *in pari delicto* that the courts would not aid the one who had paid money to the other in the promotion of the common purpose, to recover it back. Such a case would partake of the character of a conspiracy to defraud. So if two parties entered into a partnership to carry on such a business as defendant conducted, the courts would not lend their aid to either to enforce the agreement between them.

But where a party carries on a business of promoting marriage as the defendant appears to have done, it is plain to be seen that the natural tendency of such a business is immoral and it would be so clearly the policy of the law to suppress it and public interest would be so greatly promoted by its suppression, that there would be no hesitation upon the part of the courts to aid the party who had patronized such a business by relieving him or her from all contracts made, and grant restitution of any money paid or property transferred. In that way only could the policy of the law be enforced and public interests promoted.

Contracts of this sort are considered as fraudulent in their character and parties who pay money for the purpose of procuring a husband or wife will be regarded as under a species of imposition or undue influence.

The subject is classed by all text writers under the head of constructive or implied fraud, and it is upon the application of rules which belong to that branch of the law that the cases have been decided to which I have referred.

We are of the opinion, therefore, that it was error to hold as a legal conclusion that the parties to the contract in question were equal in guilt.

The learned General Term of the Common Pleas appeared to have considered that the voluntary character of Mrs. Guion's

acts was decisive of this question and deprived her of the right of recovery.

It is true there is no evidence of actual over-persuasion or undue influence.

But at most the inferences to be drawn from these facts were for the jury.

The prominent fact in the case is that such a place as the defendant maintained existed in the community with its evil surroundings and immoral tendencies.

What influence was exerted upon the mind of the widow by the mere fact of the existence of such a place to which resort could be had, cannot of course appear except by inference. But if the evidence was not sufficiently strong to authorize the court to hold as a question of law that the parties were not *in pari delicto* it at least presented a question of mixed fact and law for the jury.

Our opinion is that the same reasons that have induced courts to declare contracts for the promotion of marriage void, dictate with equal force that they should be set aside and the parties restored to their original position. To decide that money could not be recovered back would be to establish the rules by which the defendant and others of the same ilk could ply their trade and secure themselves in the fruits of their illegal transactions.

We are of the opinion, therefore, that the Common Pleas erred in reversing the order of the City Court, and that a new trial should have been granted.

The order appealed from should be reversed, and the order of the General Term of the City Court affirmed, with costs.

All concur.

Order reversed.