LAUN, Appellant, vs. PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA, Respondent.

*April 10—April 30, 1907.*

*Life insurance: Illegal rebates of premium: Validity of policy: Recovery of premiums paid: Construction of statutes.*

1. Under sec. 1955o, Stats. (1898)—prohibiting any life insurance company or agent from paying or allowing, "as an inducement to insurance, any rebate of premium . . . or any valuable consideration or inducement whatever not specified in the policy," and providing for revocation of the license of any company or agent violating the section,—the fact that a rebate of premium is paid or allowed (as provided for in a supplemental contract) does not render a policy of insurance itself either illegal or invalid, and after its delivery and acceptance premiums paid thereon cannot be recovered by the insured. *Urwan v. N. W. Nat. L. Ins. Co.* 125 Wis. 349, distinguished.

[2. Whether under said sec. 1955o a rebate of premium is legal if specified in the policy, not determined.]

3. Before pronouncing invalid a contract which is claimed to contravene a statute, a court should consider whether the statute expressly prohibits the contract, penalizing the act of making it and punishing all concerned, or, without express prohibition,

merely imposes a penalty upon one of the parties; the nature
of the sanction, whether fine or imprisonment or civil forfeit-
ure; whether the act in question is *malum in se* or merely
*malum prohibitum;* whether it comes within the prohibitive
words of the statute generally or only upon condition that cer-
tain formalities of evidence are omitted; the subject matter
of the legislation and the effect upon innocent third persons of
holding the contract void; whether to hold it void would not
rather encourage than discourage violations of the statute; and
what class of persons or interests the statute is intended to
protect, and whether that protection would be defeated by hold-
ing the contract void.

APPEAL from an order of the circuit court for Calumet
county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

The appeal is from an order sustaining a general demurrer
to the complaint.

For the appellant there were briefs signed by *McGee &
Jeger,* attorneys, and *Jackson B. Kemper,* of counsel, and
oral argument by *Mr. Kemper, Mr. C. A. A. McGee,* and
*Mr. L. M. Jeger.*

For the respondent there was a brief by *Winkler, Flanders,
Bottum & Fawsett,* attorneys, and *Cratty Bros., Jarvis &
Sample, Herbert J. Goudge,* and *James G. Flanders,* of coun-
sel, and oral argument by *Mr. Goudge.*

TIMLIN, J. As shown by the complaint the Conservative
Life Insurance Company was a life insurance corporation of
California licensed to carry on its business in this state, and
on or about May 20, 1902, it made with the plaintiff, a resi-
dent of this state, in this state a contract whereby it undertook
to issue to the plaintiff a policy of insurance for $5,000 upon
his life for an annual premium of $143.40 to be paid by the
insured. The plaintiff was induced to assent to the receipt of
this policy and the payment of said premium by means of an
offer made by the insurance company to appoint the plaintiff
one of a board of Local Advisers of said company for the state
of Wisconsin, which board should in no event exceed 300 in

number and which appointment involved the doing of no actual work or labor on the part of the assured, but in consideration of the use of his name as one of said board of Local Advisers the assured would receive certain deductions and rebates from the amount of his annual premium to be paid to said insurance company, the amount of such deductions or rebates depending upon the number of Local Advisers to be appointed by said company in this state. Moved and induced by such representations, the plaintiff, on or about May 20, 1902, made application for a policy of insurance in the amount of $5,000 at an annual premium of $143.40 to be paid for a period of twenty years, and at the same time made application for his appointment as one of said local board, and at the same time paid the first premium of $143.40 on the policy. Consequently on May 28, 1902, there was delivered to the plaintiff a policy of life insurance as described, together with a paper entitled "Contract of Local Advisers— Limited to 300." This last purported to appoint the plaintiff a Local Adviser of said company subject to the insurance statutes and certain express provisions of the contract as follows:

"(1) The board of said Local Advisers appointed in the state of Wisconsin shall not exceed three hundred. (2) On the first day of February of each year during the continuance of this contract the company shall compute the number of thousands of insurance in force written for a period of ten years from and after February 1, 1902, in the state of Wisconsin, upon which there shall have been paid in cash during the preceding year one full annual premium, two semi-annual or four quarter-annual premiums. (3) The company further agrees on the dates aforesaid (February 1 in each year) to credit said Local Adviser with such a sum of money from the expense element of premiums paid on insurance written in said state during said period, after said date, as shall be obtained by dividing an amount of money equal to one dollar for each $1,000 of insurance in force at said dates, written during said period, after February 1, 1902, by the number of

said Local Advisers' contracts in force at the time of such distribution.    The amount so credited to said Local Advisers shall each year on the anniversary of the date of this contract, or within thirty days thereafter, provided this contract be then in force, be paid to him by said Conservative Life Insurance Company, subject to the agreements of said Local Adviser in his application herefor.    And said payment shall be in compensation for his services as Local Adviser and for no other consideration."

Thereafter, in pursuance of this agreement, upon said annual premium of $143.40 the plaintiff received for such alleged services on May 23, 1903, a rebate of $5.37, he paying only $138.03; on May 27, 1904, a rebate of $6.50, he paying only $136.90; on May 28, 1905, a rebate of $8.24, he paying only $135.16.    These sums paid, together with the first full premium of $143.40, aggregating $553.49, make up the sum sought to be recovered in this action.    It is averred that said policy of insurance and supplemental contract of Local Adviser constituted but a single contract, and constitute an agreement for rebate contrary to the laws of the state of Wisconsin, and that said contract of insurance so entered into between this plaintiff and said Conservative Life Insurance Company was and is wholly void and of no effect, and that said Conservative Life Insurance Company thereupon became and was indebted to the plaintiff in the said sum of $143.40 paid as aforesaid for the year beginning May 28, 1902, and the other items for 1903, 1904, and 1905 above mentioned.

It is then averred that on or about March 12, 1906, the defendant by agreement of consolidation with said Conservative Life Insurance Company took over and became possessed of all the assets of said Conservative Life Insurance Company, and in consequence thereof is obligated to and has assumed and agreed to pay and discharge all and singular the contracts, liabilities, and obligations of any name and nature of the said Conservative Life Insurance Company, and that upon its so

doing the Conservative Life Insurance Company and the defendant delivered to the plaintiff a certain contract under seal, which is annexed to the complaint and made part thereof, and which recites a consolidation of business between these companies and that the defendant has acquired the assets and business of the Conservative Life Insurance Company, and that the defendant, therefore, assumes and guarantees the fulfilment of all existing contracts and obligations of the Conservative Life Insurance Company. The complaint avers a demand upon the defendant for the return of the sums of money so paid to the Conservative Life Insurance Company and that the defendant neglects and refuses to return the same.

During the time covered by these transactions there was and now is in force in the state of Wisconsin sec. 1955o, Stats. (1898), as follows:

"No life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectation of life in the amount or payment of premiums or rates charged for life or endowment policies, or in the dividends or other benefits payable thereon or in any other of the terms and conditions of the contract it makes; nor shall any such company or any agent thereof make any contract or agreement as to such contract other than as plainly expressed in the policy issued pursuant thereto, nor pay or allow, or offer to pay or allow, as an inducement to insurance any rebate of premium payable on the policy or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever not specified in the policy. Whenever it shall appear to the satisfaction of the commissioner of insurance, after a hearing before him upon notice, that any company, officer, agent, subagent, broker or solicitor has violated any provision of this section he shall revoke the license of any such company or person to transact business in this state, and no other license shall be issued to any such company or person within three years after such revocation."

This act is very like ch. 281, Pub. Laws of Maine for 1889, which was construed in the case of *State v. Schwarzschild,* 83 Me. 261, 22 Atl. 164, on April 6, 1891, a few days before its adoption in this state as ch. 267, Laws of 1891. The Maine statute is unlike ours in that it imposes a penalty by fine as well as the revocation of license. The case last cited construed ch. 281, Pub. Laws of Maine for 1889, to mean that the rebate of premium is not illegal if such rebate is specified in the policy. It is not necessary to determine in this cause whether this is the correct construction of our statute, and we express no opinion thereon.

Where a contract is expressly declared void by statute, or where the law declares the making of the contract a misdemeanor, or imposes a penalty upon the parties to the contract for the act of contracting, there is no doubt of the general rule of law that the courts will neither enforce that contract at the suit of one party, nor, if the contract has been executed, aid either party to recover back anything he may have paid thereon. *Clarke v. Lincoln L. Co.* 59 Wis. 655, 18 N. W. 492, and cases cited at page 658 (18 N. W. 493). Where the contract is declared void by statute, and the statute is within the power of the legislature to enact, there is not much room for discussion, although even then the whole purview of the statute may indicate that the word "void" is used in the sense of "voidable." *French L. Co. v. Theriault,* 107 Wis. 627, 83 N. W. 927. Where the statute does not expressly declare the contract void, but prohibits by penalty the making thereof, the courts infer a legislative intent that the contract shall be void, because to enforce the contract would practically set the statute at naught.

"But these rules do not obtain where the contract itself is not prohibited by law, but is declared to be void because not made or evidenced in the manner prescribed by law, or where the contract is declared void by law as to one party in order to protect the other against injustice or oppression. *Brandeis v.*

*Neustadtl,* 13 Wis. 142; *Tollensen v. Gunderson,* 1 Wis. 110; and *Thomas v. Sowards,* 25 Wis. 631, are cases of the first class. *Wood v. Lake,* 13 Wis. 84; *Gill v. Rice,* 13 Wis. 549; *Dole v. Northrop,* 19 Wis. 249; *Lee v. Peckham,* 17 Wis. 383; *First Nat. Bank v. Plankinton,* 27 Wis. 177, and many others that might be cited, are cases of the second class arising under the usury laws of this state." *Clarke v. Lincoln L. Co.* 59 Wis. 655, 661, 18 N. W. 495.

But if we assume as most favorable to the appellant that the undertaking of the respondent is comprehensive enough to include within its scope all liability of the Conservative Life Insurance Company to repay or refund moneys paid for premiums upon a void contract of life insurance, we will *in limine* meet the question whether or not the contract of insurance described in the complaint was void or voidable at the election of the insured under the statute above quoted. Only after arriving at a decision that the contract in question was void under the statutes of this state can the question of the equal delict of the plaintiff and the Conservative Life Insurance Company be considered. In determining this preliminary question there is always open for consideration, upon the terms of the statute, its subject matter, and the mischiefs it was intended to prevent, the question whether the legislative intention will be best subserved by holding the contract void. The plaintiff in this case contends that the contract to insure and the policy issued in execution of that contract were void because of the statute above quoted; hence the plaintiff could recover his premiums actually paid, from the company to which they were paid, and for that reason from this defendant, which took that company's assets and agreed to pay all its obligations. It may be well to review some cases cited by counsel as well as authorities not cited for the purpose of ascertaining what construction should be given to the statute in question in this particular.

In *Arnd v. Sjoblom, post,* p. 642, 111 N. W. 666, ch. 438,

Laws of 1903, which imposes a penalty equal to the amount of the note upon any person who takes a note for "any lightning rod, patent, patent right, stallion, or interest therein," but fails to write or print on said note in red ink that it was given for such consideration, is held not to make such note void in the hands of an innocent purchaser without notice of the fact that the note was given for such consideration. In *Union T. Co. v. Preston Nat. Bank,* 136 Mich. 460, 99 N. W. 399, where a check held by the plaintiff bank was certified by the officer of the defendant bank under such circumstances as to constitute a misdemeanor and subject the person certifying the check to a fine, the check was held valid in the hands of the plaintiff, an innocent holder. The court said:

"We think it not improper to infer that it was the legislative purpose to protect the interests of the stockholders and depositors of all banks and not merely the stockholders and depositors of particular banks whose officials might be guilty of criminal misconduct."

*Irwin v. Curie,* 171 N. Y. 409, 64 N. E. 161, was a case where the statute under consideration made it a misdemeanor for an attorney "to promise, give or procure to be promised or given a valuable consideration to any person as an inducement to placing or in consideration of having placed in his hands a demand of any kind for the purpose of bringing an action thereon," and the complaint was by a layman against an attorney on a contract covered by this statute. The statute was held no bar to the maintenance of the action. The court said:

"It will be observed that this statute does not provide that such a contract shall be wholly void, nor does it in terms purport to operate upon a layman who may be persuaded to procure business for an attorney because of the latter's promise to divide the profits with him. Its prohibition is directed against the attorney and counselor who is an officer of the court, and the very next section (75) provides that 'an attorney and counselor who violates either of the last two sec-

tions is guilty of a misdemeanor.' Here, again, we note that
the penalty inflicted is upon the attorney and counselor alone,
and not upon his accomplice or possibly intended victim."

*Pennypacker v. Capital Ins. Co.* 80 Iowa, 56, 45 N. W.
408, was a case where an Iowa insurance company, without
having obtained license or permission so to do under the laws
of Pennsylvania, insured against loss by fire real property in
Pennsylvania. The statutes of the latter state forbade such
insurance by an unauthorized or unlicensed insurance com-
pany and made the act of writing such insurance punishable
by fine. In an action to recover for loss by fire upon a policy
so written the defendant insurance company contended that
the policy was void by reason of these statutes, but it was
ruled that the contract of insurance was valid notwithstanding
the statutes. The court said:

"The evident purpose of such a law is the protection of
those paying for insurance upon property in that state. The
prohibition and penalty is against the company only. No
duty is required of the insured, and no act upon his part ex-
pressly prohibited. There is nothing in the law declaring
what effect it shall have upon policies issued and accepted as
this is alleged to have been."

*Pangborn v. Westlake,* 36 Iowa, 546, was a case where a
statute forbade the sale of any lot in any town or addition
until the plat thereof was acknowledged and recorded, and
prohibited such sale by imposition of a forfeiture of $50 for
each lot sold or disposed of. In considering whether a con-
tract for the sale of a lot in a plat that had not been recorded
was void on account of this statute the court said:

"We are therefore brought to the true test, which is that
while, as a general rule, a penalty implies a prohibition, yet
the courts will always look to the language of the statute, the
subject matter of it, the wrong or evil which it seeks to remedy
or prevent, and the purpose sought to be accomplished in its
enactment; and if from all these it is manifest that it was not
intended to imply a prohibition or to render the prohibited
act void, the courts will so hold, and construe the statute ac-
cordingly."

*The Manistee,* 5 Biss. 381, was a case where two insurance companies having had policies of insurance on the cargo of the schooner Robinson which was sunk and lost by collision with the steamer Manistee paid the loss and filed a libel against the Manistee to recover from it the amount paid. It was shown that one of these policies was issued at Chicago, Illinois, in violation of the statute of the state of Illinois which made the act of issuing such policy punishable by fine and imprisonment of the insurance agent issuing the policy. But it was ruled that the libelant could recover, the court saying:

"Where a statute is silent, and contains nothing from which the contrary can properly be inferred, a contract in contravention of it is void. But the whole statute must be examined in order to decide whether or not it does contain anything from which the contrary can be properly inferred. There is no penalty pronounced against a person for obtaining a policy from, or doing business with, the company that has not complied with the requirements of those statutes."

In *Watertown F. Ins. Co. v. Rust,* 40 Ill. App. 119, an insurance company foreign to Illinois issued a policy of fire insurance in Illinois on property in the latter state, in violation of a statute prescribing penalties upon any insurance company which should do so without a certificate of authority or license from the proper state officer, and in an action to recover for loss by fire under this policy the policy was held valid. The court said, among other things:

"In respect to the effect of prohibitory statutes upon agreements made in violation of them, the authorities make a clear distinction between those which are intended to regulate the conduct of the citizens generally and those intended to restrain one class for the protection of another."

This decision was affirmed on appeal in 141 Ill. 85, 30 N. E. 772, where the court said:

"Our statute was manifestly enacted for the protection of the public against the acts of irresponsible foreign insurance

companies. The duties it enjoins and the penalties it imposes are upon the insurance companies, and not upon those who in good faith contract with them."

In *Behler v. German Mut. F. Ins. Co.* 68 Ind. 347, under similar circumstances in an action against an insurance company on a policy of insurance against fire, the court said:

"To hold that a policy issued by a foreign insurance company to a citizen of this state, and premium notes made to them, were void for a noncompliance with our statute, would enable the foreign company to issue their policy, obtain what premiums they could, then avoid the policy by their own act. Such cannot be the fair intention of the statute."

In *Union Mut. L. Ins. Co. v. McMillen,* 24 Ohio St. 67, the action was upon a life insurance policy issued by an insurance company foreign to the state of Ohio in contravention of a statute of that state which imposed a penalty of $500 upon the insurance agent for the issue of each policy. The court held the policy valid, saying, among other things:

"The prohibition in the statute is against persons acting for companies that have not complied with the prescribed conditions. Such persons alone are made subject to the penalty. Whether the statute was meant to invalidate policies issued by companies in contravention of its provisions is to be determined from a consideration of the statute as a whole."

*Walter A. Wood M. M. Co. v. Caldwell,* 54 Ind. 270, was an action brought by a foreign corporation on a note where the defense was that the corporation had not complied with the requirements of the statute prohibiting the transaction of business within the state under penalty of fine and imprisonment. It was held that such failure operated as an abatement of the action and that the foreign corporation might thereafter qualify itself by compliance with the law. This involved a considerable examination into the effect of statutes of this nature upon contracts. In the opinion in the cause last cited, quoting from another Indiana case, speaking of the rule that where a statute forbids or penalizes the making of a contract

that contract will be held invalid whether the statute expressly declares it to be invalid or not, the court said:

" The rule is properly applied only where the reason upon which it is founded exists. 'The law ceases with the reason thereof,' and it is a grave error to regard it as a merely arbitrary rule, applicable to all contracts which are prohibited by statute. It is generally applicable because the thing prohibited is usually immoral, or against public policy."

In *Harris v. Runnels,* 12 How. 79, it is said:

"It is true that a statute containing a prohibition and a penalty makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition; but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void. . . . That legislators do not think the rule one of universal obligation, or that, upon grounds of public policy, it should always be applied, is very certain. For, in some statutes, it is said in terms that such contracts are void; in others, that they are not so. In one statute there is no prohibition expressed, and only a penalty; in another, there is prohibition and penalty, in some of which, contracts in violation of them are void or not, according to the subject matter and object of the statute; and there are other statutes in which there are penalties and prohibitions, in which contracts made in contravention of them will not be void, unless one of the parties to them practices a fraud upon the ignorance of the other. It must be obvious, from such diversities of legislation, that statutes forbidding or enjoining things to be done, with penalties accordingly, should always be fully examined before courts should refuse to give aid to enforce contracts which are said to be in contravention of them."

Upon this general subject *Tate v. Comm. Bldg. Asso.* 97 Va. 74, 33 S. E. 382, speaks of the agreement before the court as follows:

"Its execution involved no moral turpitude. It was simply condemned by the law because contrary to the interests of

society. In such case the maxim, *in pari delicto,* is not inflexibly applied, but the court will consider whether public policy will be promoted and like agreements be discouraged by enforcing or avoiding the agreement, and, if the policy of the. law will be advanced by granting relief, it will be given. 1 Pom. Eq. Jur. § 403; 2 id. § 941; 1 Story, Eq. Jur. § 298."

See, also, *Toledo T. & D. Co. v. Thomas,* 33 W. Va. 566, 11 S. E. 37. In the case last cited, as well as in some text-books, there seems to be a misunderstanding of the case of *Ætna Ins. Co. v. Harvey,* 11 Wis. 394. In that case, where the action was upon a note given for the premium on a certain policy of insurance in the face of a statute forbidding the taker of the note to transact business except on conditions there specified, which conditions were not complied with, the note was held void. Thus the policy of that statute as understood by the court was upheld and carried out. The same is true of *Presbyterian M. Fund v. Thomas,* 126 Wis. 281, 105 N. W. 801. In these cases the party prohibited and the party punishable by statute, the party upon whom restraint was placed for the protection of the class to which defendant belonged, sought to enforce an executory contract the making of which was forbidden by statute. There is no analogy between such cases and the case at bar.

In *Tracy v. Talmage,* 14 N. Y. 162, the action was upon the allowance of a claim against an insolvent banking association of which Talmage was receiver. This banking association was forbidden by statute to buy bonds for speculation and also forbidden to issue obligations payable at a future time. The basis of the claim presented was the negotiable obligations of the bankrupt payable on time given upon purchase of bonds of the state of Indiana which it bought for speculation. The claim was allowed. The common law on this subject from the earliest times was industriously examined with reference to the effect of statutes punishing one of the parties to a forbidden transaction, but containing no express declaration avoiding the contract and no mandate that the act itself was

unlawful, and the opinion concludes this investigation as follows:

"This case is the last of the class to which I shall refer, and I think it would be difficult to find a series of cases, running through almost a century, more uniform and consistent in tone and principle and in the distinctions upon which they are based. They have never, so far as I am aware, been overruled; and I know of no principle which would justify this court in disregarding them. The doctrine seems to me eminently reasonable and just, and I discover no principle of public policy to which it stands opposed. On the contrary, I concur in the sentiment which Judge WILDE in *White v. Franklin Bank,* 22 Pick. 181, expresses thus: 'To decide that this action cannot be maintained would be to secure to the defendants the fruits of an illegal transaction, and would operate as a temptation to all banks to violate the statute by taking advantage of the unwary and of those who may have no actual knowledge of the existence of the prohibition, and who may deal with a bank without any suspicion of the illegality of the transaction on the part of the bank.' . . . The imposition of the penalties for a violation of the restraining law upon the corporation alone does not make it the guilty party, but it is simply evidence that the legislature so regarded it, and the reasons are equally strong for fixing the principal guilt upon the same party where its acts merely violate the principle of public policy."

In *Sacketts Harbor Bank v. Codd,* 18 N. Y. 240, the statute in question imposed a heavy penalty upon banks for receiving foreign bank notes at a rate of discount exceeding a quarter of one per cent. or uttering such notes as money. In answer to an action against a bank upon a bill of exchange it contended that the consideration of the bill was the sale by the plaintiff to the bank of foreign bank notes at a greater discount contrary to this statute, and therefore there could be no recovery, but the court held the contract valid, saying:

"The receiving bank, I assume, violates the statute because it exacts a greater discount than it is allowed to take. But is the customer also guilty? The answer to the question is

plain. The statute declares it to be unlawful for a bank or banker to *receive* foreign notes at greater rates, etc., and it prescribes a penalty of $1,000 for each offense. Stats. 1853, ch. 223, § 4; Stats. 1839, ch. 355, § 4. The language in which the offense is defined and the penalty declared evidently does not include the customer making the deposit or delivering the notes. No degree of guilt therefore attaches in any such case to any one except the corporation and its agents, or the individual banker receiving the notes at the prohibited rate of discount. The act, it must be borne in mind, involves in itself no moral turpitude. It is an offense because the statute declares it to be so, and for that reason alone. It is an offense, therefore, which has precisely the proportions the statute gives to it, and it can have no other or greater. The offense and the offender are both marked by the legislature, and the penalty is prescribed."

It cannot be profitable to pursue this line of investigation much further, but before leaving this branch of the subject it may not be inappropriate as an opinion upon the lack of moral turpitude in such transaction to cite *Quigg v. Coffy,* 18 R. I. 757, 30 Atl. 794, where a statute prohibited a life insurance company from making any distinction or discrimination as to premiums or rates charged for policies, etc., and imposed a penalty upon any life insurance company, or any officer or agent thereof, violating such provision, and the action was on a promissory note given in part payment for a rebated premium on a life insurance policy. The court said:

"The legal effect of the transaction, so far as it related to the company, was precisely the same as though the full premium on the policy had been collected by the plaintiff [the agent] and paid over to the company, and the company had then returned to the plaintiff his commission of fifty per cent. of the premium. The company in that event would have received the full amount of the premium to which it was entitled, as it has on the case before us. It has made no distinction or discrimination, which is prohibited by the statute, but has received the full amount which would have been received from any person insured in the same circumstances. It has

not, nor has any officer or agent of it, been guilty, therefore, of any violation of the statute. . . . There was nothing unlawful in this arrangement, and we fail to see why the agreement to furnish the names of persons to be insured was not a sufficient consideration for the retention by the defendant of half of the commission. The plaintiff [the agent] had a right, for aught that we can see, to make such a disposition of his share of the commission, or even to have given it to the defendant without consideration, if he had seen fit."

This examination might be greatly extended by following out the lines of precedents found in the cases above mentioned, but we believe it sufficiently appears that before a court can pronounce invalid a contract which is claimed to contravene a statute it must first consider the form of the statute to ascertain whether it expressly prohibits the contract, whether it penalizes the act of making the contract and punishes all those concerned therein, or whether, without expressly prohibiting the making of the contract, it imposes a penalty upon only one of the parties to the transaction; the nature of the sanction which the legislature has declared, that is, whether fine or imprisonment or civil forfeiture, must then be considered; then whether the act challenged is *malum prohibitum* or *malum in se;* whether it comes within the prohibitive words of the statute generally or only upon condition that certain formalities of evidence are omitted. The subject matter of the legislation must also be considered and the effect upon innocent third parties of holding the contract void. It is then considered whether to hold the resulting contract void would not rather encourage than discourage violations of the statute by allowing the guilty party who alone is subject to the sanction of the statute to profit by his breach of the law. And further the court should consider what class of persons or interests the statute is intended to protect, and whether that protection is defeated by holding the contract void. From all these considerations, aided by sound rules of interpretation wherever applicable, the court deduces and gives

effect to the legislative intention in this respect in all cases in which the statute has not expressly declared the contract to be void.

Let us now examine some of the consequences contended for by the appellant in this cause. A life insurance company may have contracts with thousands of persons for millions of dollars, and be found to have through its agents, with or without the knowledge of the officers of the company, granted rebates out of the agent's commission or out of the expense fund to many of its patrons. The act is *malum prohibitum* only. The legislature neither declared the insurance contract void nor made the act a misdemeanor, nor undertook to punish both parties to the transaction, nor undertook to add any sanction to the law against discrimination other than the forfeiture of license of the insurance company, or of the agent, to do business in this state. Can it be presumed under the authorities cited in this opinion that there was a legislative intention that the insurance company should retain all premiums and enrich itself by illegality through absolution from all liability on such policies? Can it be presumed that it was intended that all premiums that the insured might pay at any time within the period limited by law for the commencement of actions could be recovered back to the disadvantage of those insurers who conformed to law and paid the legal rates, by diminishing the annual surplus which should go to lessen their premiums, or by impairing the fund to which such law-abiding insurers must look for security? Would not this put a premium upon violations of this statute and enrich those concerned in such violations at the expense of the just man who kept the law? Were there nothing but these consequences apparent from the peculiar subject matter of the legislation in question, we might be warranted in inferring that the legislature intended no such consequences. But there are other indications in the statute itself of the same import. The peculiar penalty of the statute falls only upon one of the offend-

ing parties. *Sacketts Harbor Bank v. Codd,* 18 N. Y. 240. The insurance company or its agent is not by this statute punished as for a misdemeanor. The offender merely forfeits its license. The maxim, *expressio unius est exclusio alterius,* may well be applied to the statute in question in this particular. Or we might say, as was said in *Sacketts Harbor Bank v. Codd, supra:* "It is an offense, therefore, which has precisely the proportions the statute gives to it, and it can have no other or greater."

"A prohibitory statute may itself point out the consequences of its violation, and if, upon a consideration of the whole statute, it appears that the legislature intended to define such consequences and to exclude any other penalty or forfeiture than such as is declared in the statute itself, no other will be enforced." *Pratt v. Short,* 79 N. Y. 437, 445; *Duval v. Wellman,* 124 N. Y. 156, 26 N. E. 343.

We must hold that, considering the subject matter of this legislation, the relations of other nonoffending policy-holders to the corporation and its funds, and the particular consequences prescribed by the statute for its violation falling only upon one of the parties to the prohibited transaction, the contract of insurance itself is neither illegal nor invalid, and that the plaintiff received in consideration of his premiums paid from the Conservative Life Insurance Company a valid policy of life insurance, and consequently that he cannot recover back these premiums or any part thereof. Great stress is laid in the briefs and arguments upon the case of *Urwan v. N. W. Nat. L. Ins. Co.* 125 Wis. 349, 103 N. W. 1102. That was a case, however, where the contract to deliver a policy of life insurance was wholly executory, and while the contract was still executory the insured refused to receive the policy on the ground that it did not conform to the contract therefor, and upon the further ground that it was issued in violation of sec. 1955*o,* Stats. (1898). The latter was ample ground for refusal to receive it because the insured could not be com-

pelled to receive a policy in an insurance company whose license to do business in this state might be terminated by the very act of delivering this policy in consideration for a rebated premium. The language of that opinion must, like that of all opinions, be construed with reference to the questions before the court and the particular subject matter of discussion. So construing that opinion, there is nothing therein contained upon which the plaintiff can base any right to maintain the present action where the contract to insure was fully executed by delivery of the insurance policy, its retention for three years, and the payment of three annual premiums thereon.

*By the Court.*—The order of the circuit court is affirmed.