(23 Misc. Rep. 40.)

## PLACE v. CONKLIN et al.

(Supreme Court, Special Term, Orange County.   March, 1898.)

CANCELLATION OF MORTGAGE—CONTRACT AGAINST PUBLIC POLICY.

Where a husband conveys a house and lot to his wife, which she mortgages to an agent in consideration for his services in procuring her marriage, and in accordance with an agreement entered into with him before her marriage, the husband may have the property restored to him freed from the lien of the mortgage; the contract being void as against public policy, and the wife not objecting to the reconveyance.

Action by Isaac D. Place against James H. Conklin and another. Judgment for plaintiff.

A. H. F. Seeger, for plaintiff.

Samuel E. Dimmick (S. W. Fullerton, of counsel), for defendant Conklin.

Brown & Cassedy, for defendant Dumville.

HIRSCHBERG, J.   There is very little dispute between the parties as to the facts in this case, and none as to the controlling facts. The plaintiff, in the summer of 1895, resided alone at Washingtonville, on a place owned by him, and which cost him $3,400; and he was possessed of personal property of the value of about $3,500. He was a widower, and very old.   The defendant James H. Conklin was a neighbor and intimate friend.   The plaintiff had experienced difficulty in procuring a satisfactory housekeeper, and, in conversation with Conklin, informed the latter that, if he could find a woman who would prove satisfactory in that capacity, he (the plaintiff) would give her $500.   Conklin referred to his cousin, the defendant Mrs. Place (then Mrs. Hall, and at service in Vermont), as a person who would probably suit the plaintiff, and undertook to write to her and see if she would come.   Conklin says the plaintiff told him he would marry the woman if she suited him, and that, on the day he married her, he would give her $500 in cash, a like amount in stock, and a deed of his house and lot at Washingtonville.   On the 16th day of June, Conklin did write to his cousin, urging her to come to Washingtonville, and informing her that the plaintiff had asked him to write to her in regard to marrying him, describing the plaintiff as a man about 75 years old, "very old, and can't live very long at the longest," and with a fortune of about $75,000 or $80,000.   On June 23d he wrote her again in much the same strain, and two or three times in July, always urging her to come, and assuring her of the plaintiff's wealth and the ample provision he could and would make for her in the event of their marriage.   In response to these letters, the defendant did come to her cousin's house, on July 15th, where the plaintiff met her, and an engagement was made, within a day or two, for their marriage on July 24th.   At the time of the engagement, the plaintiff agreed in Conklin's presence to give his cousin $500 on the day of the marriage and a deed of the Washingtonville property.   On July 22d, Conklin and his cousin, in pursuance of a previous verbal understanding, executed a written agreement, reciting the fact that

Conklin had introduced her to the plaintiff, and that she and the plaintiff had become engaged to be married through Conklin's recommendation, counsel, and advice, and binding her, in consideration thereof, to pay him $500, and to execute and deliver to him her bond for $3,500, secured by her mortgage on the property then occu pied by the plaintiff. The marriage took place July 24th at Conklin's house, and, at the conclusion of the ceremony, the plaintiff gave his wife a check for the promised $500, which she at once transferred to Conklin. Subsequently a promissory note of the plaintiff's was substituted for the check, and was ultimately collected by Conklin. The deed of the Washingtonville property, however, was not executed until July of the following year. The plaintiff did then deed that property to his wife, largely through Conklin's efforts; and, on the same day, Mrs. Place executed and delivered to Conklin, in pursuance of their written agreement, a bond, secured by mortgage on that property, for $2,000. Conklin claims to be still entitled to the additional $1,500 called for by the terms of his written contract with Mrs. Place. The action is for the purpose of procuring restitution to the plaintiff, and no opposition or defense is interposed by Mrs. Place.

There is no room for doubt that the contract between Conklin and Mrs. Place is illegal and void as against public policy, and that she could maintain an action to cancel and annul the bond and mortgage, and to recover back the money paid. It seems equally clear that the plaintiff can maintain such an action, although his claim to a reconveyance of the real estate might not be enforced against his wife's opposition. On the first proposition the case of Duval v. Wellman, 124 N. Y. 156, 26 N. E. 343, is quite decisive. In that case a woman had paid $50 to a matrimonial agent for introduction to a prospective husband, and it was held that she could enforce restitution, notwithstanding she was particeps criminis. The leading authorities are therein cited, and the decision is based on the broad ground that the natural tendency of the business of promoting marriages is immoral, resulting in ill-advised and often fraudulent marriages, and necessarily injurious to the public interest and welfare. A contract to procure a husband or wife for a consideration is regarded as fraudulent in its character, and the party paying the consideration, although with full knowledge, is nevertheless regarded as acting under a species of imposition or undue influence. In such a case the court unanimously held that equity will relieve the injured party by setting aside the contract, and restoring him to his original position. In this case the plaintiff has been deprived of his property by fraud. It is not pretended that he knew anything of the bargain between his wife and Conklin. She had no property of her own, and the contract was, in effect, to pay Conklin for procuring the marriage, by means of money and property to be acquired as the fruits of the union. The unlawful agreement was not to pay Conklin with property belonging to Mrs. Place, but was to procure the plaintiff's property for Conklin, through the medium of a forbidden bargain. By the terms of the conspiracy, the husband was to be induced to part with his

property under the mistaken belief that he was making provision for his wife's support and maintenance, whereas, in fact, he was unconsciously furnishing her with funds to be at once used by her in the payment of the purchase price of himself, as a husband, by virtue of a secret and illegal agreement between her and the intimate friend of the husband, through whose active agency the marriage had been effected. The plaintiff's agreement, at the time of the engagement, to pay his wife $500, and to deed her the real estate, was without any valid consideration, except such as the law recognizes in the claims of affection and the duty of providing for and supporting a wife. But such consideration is entirely lacking where the transfer is effected for the sole purpose of satisfying the unlawful demands of a marriage brokerage contract. Clearly, if the husband had himself engaged to pay Conklin for the procuring of a wife, he could recover back all payments made in pursuance of such agreement; and it is difficult to see why equity should refuse him relief merely because he is an innocent victim instead of a willing dupe. He has been fraudulently deprived of his property by means of an immoral and illegal contract, having that result as its expressed object. The contract was procured by his intimate friend and adviser, who, while pretending to act in plaintiff's interests, was secretly plotting to procure the latter's property for himself. The agency employed by the friend to procure the property is itself condemned as violative of the law and against public policy, but, nevertheless, has been successful in investing him with the fruits of the contract. The victim has made timely discovery of the imposition practiced on him, and has invoked the aid of a court of equity to restore his property, and the settled and fundamental rules of equity forbid that such aid should be withheld. The bond and mortgage in question were assigned by Conklin to his wife November 12, 1896, and again assigned by her to the defendant Dumville, January 9, 1897. These defendants, however, are not to be regarded as bona fide purchasers for value, under the proof in the case, and such assignments are no bar to a decree for full restitution.

Judgment will be rendered for the plaintiff, as demanded in the complaint, with costs against the defendant James H. Conklin. Ordered accordingly.